# United States Court of Appeals for the Federal Circuit

---

**REALTEK SEMICONDUCTOR CORPORATION**,

Appellant

**v.**

**INTERNATIONAL TRADE COMMISSION**,

Appellee

**DIVX, LLC**,

Intervenor

---

2023-1095

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-1222.

---

**APPELLANT'S NON-CONFIDENTIAL PRINCIPAL OPENING BRIEF**

---

April 24, 2023

Theodore J. Angelis
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Phone: +1.206.623.7580
Theodore.Angelis@klgates.com

*Counsel for Appellant Realtek Semiconductor Corporation*

# CERTIFICATE OF INTEREST

Counsel for Appellant Realtek Semiconductor Corporation certifies the following:

1. The full name of every entity represented by us is:

Realtek Semiconductor Corporation

2. The name of the real party in interest for the entity. Do not list the real parties if they are the same as the entities.

None/Not Applicable

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None/Not Applicable

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Jason A. Engel (K&L Gates LLP), Elizabeth Weiskopf (K&L Gates LLP), Nicholas F. Lenning (K&L Gates LLP), Jas S. Dhillon (K&L Gates LLP), Nelson M. Hua (K&L Gates LLP), Katherine L. Allor (K&L Gates LLP), Jacob T. Michalakes (K&L Gates LLP), Jiang Wu (K&L Gates LLP), John M. Hagan (K&L Gates LLP), Kwangho Jang (K&L Gates LLP), Linda C.

Odom (K&L Gates LLP), Martha J. Dawson (K&L Gates LLP), Robert J. Benson (Orrick Herrington & Sutcliffe), Jacob C. Vannette, Ewa A. Wojciechowska (K&L Gates LLP)

5. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

| | |
|---|---|
| Future Link Systems LLC v. Realtek Semiconductor Corp. (Fed. Cir. No. 23-1056) | Future Link Systems LLC v. Realtek Semiconductor Corp. (Fed. Cir. No. 23-1057) |

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None/Not Applicable

# TABLE OF CONTENTS


STATEMENT OF RELATED CASES ....................................................................1

JURISDICTIONAL STATEMENT ...................................................................2

STATEMENT OF THE ISSUES.......................................................................3

INTRODUCTION .............................................................................................4

STATEMENT OF THE CASE...........................................................................5

I. Procedural Posture ........................................................................................5

II. Realtek's Discovery of DivX's Sanctionable Misconduct..............................9

A. DivX's February 8 Contentions, its New Infringement Theory Disclosed on April 8, and the ALJ's Order Excluding the New Theory ....................9

B. The Evidence, Revealed at the Hearing, that DivX Made False Representations When it Said it Was Pursuing Technical CBI as its Theory of Infringement ..................................................................15

C. The Testimony Revealed that DivX's Reliance on Discovery Problems as the Basis for its Non-Disclosure Was Baseless.......................................17

SUMMARY OF THE ARGUMENT ...............................................................22

STANDARD OF REVIEW .............................................................................23

ARGUMENT ..................................................................................................25

I. The Commission Acted Arbitrarily and Capriciously By Failing to Address Realtek's Request for Relief Under 19 C.F.R.§ 210.4(d)(1)(ii)....................25

II. The Commission Acted Arbitrarily and Capriciously By Treating Like Cases Differently...........................................................................................30

CONCLUSION ...............................................................................................32

CERTIFICATE OF SERVICE ..........................................................................1

CERTIFICATE OF COMPLIANCE..................................................................2

CERTIFICATE OF CONFIDENTIALITY ........................................................3

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), Appellant provides the following description of the general nature of the material redacted in the public version of its brief:

The materials deleted herein comprise CONFIDENTIAL BUSINESS INFORMATION ("CBI") pursuant to the October 15, 2020 Protective Order entered in the underlying International Trade Commission Investigation and which remains in force pursuant to Federal Circuit Rule 25.1(c)(1). The omitted material contains highly sensitive confidential business and proprietary technological information of Appellant, Appellee, and/or third parties.

Confidential material was redacted from within this brief on the following pages: iv, 6, 10-21.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arunachalam v. Int'l Bus. Mach. Corp.*,
989 F.3d 988 (Fed. Cir. 2021) ....................24

*Brooking v. Branham*,
727 F. App'x 884 (7th Cir. 2018) ....................24, 28

*Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*,
403 F.3d 771 (D.C. Cir. 2005) ....................31

*Butte Cnty., Cal. v. Hogen*,
613 F.3d 190 (D.C. Cir. 2010) ....................29

*Certain Blood Separation and Cell Preparation Devices*,
Inv. No. 337-TA-1147, Order No. 16 (Dec. 20, 2019) ....................26, 31

*Certain Blowers and Components Thereof*,
Inv. No. 337-TA-1217, Order No. 31 (October 20, 2021) ....................26, 30

*Certain Coaxial Cable Connectors and Components Thereof and Prods. Containing Same*,
ITC Inv. No. 337-TA-938, Order No. 10 (Sept. 25. 2015) ....................19, 27

*Certain Point of Sale Terminals and Components Thereof*,
Inv. No. 337-TA-524, Order No. 40 (Apr. 11, 2005) ....................26, 30

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ....................24, 28

*Christ the King Manor, Inc. v. Sec'y U.S. Dept. of Health and Hum. Servs.*,
730 F.3d 291 (3d Cir. 2013) ....................32

*Craig v. Merit Sys.Prot. Bd.*,
44 F. App'x 465, 2002 WL 1822271 (Fed. Cir. 2002) ....................24

*DivX, LLC v. LG Elecs. Inc.*,
No. 20-cv-1202-CFC-JLH (D. Del.) ....................1, 2

*ED Cap., LLC v. Bloomfield Inv. Res. Corp.*,
316 F.R.D. 77 (S.D.N.Y. 2016) .....8

*Frizelle v. Slater*,
111 F.3d 172 (D.C. Cir. 1997) .....29

*Fuller v. Whitaker*,
914 F.3d 514 (7th Cir. 2019) .....24, 28

*James v. Jacobson*,
6 F.3d 233 (4th Cir. 1993) .....28

*Kakar v. USCIS*,
29 F.4th 129 (2d Cir. 2022) .....29

*Michigan v. EPA*,
576 U.S. 743 (2015) .....31

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .....24, 30

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005) .....31

*Pub. Citizen, Inc. v. F.A.A.*,
988 F.2d 186 (D.C. Cir. 1993) .....29

*Sw. Airlines Co. v. FERC*,
926 F.3d 851 (D.C. Cir. 2019) .....24

*Tex Tin Corp. v. U.S. E.P.A.*,
935 F.2d 1321 (D.C. Cir. 1991) .....29

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of HHS*,
985 F.3d 472(5th Cir. 2021) .....31

*Viscofan, S.A. v. U.S. ITC*,
787 F.2d 544 (Fed. Cir. 1986) .....3

*Walker v. Health Int'l Corp.*,
845 F.3d 1148 (Fed. Cir. 2017) .....8

*Westar Energy, Inc. v. F.E.R.C.*,
473 F.3d 1239 (D.C. Cir. 2007) .......... 31

**Statutes**

5 U.S.C. § 706(2) .......... 23

19 U.S.C. § 1337(c) .......... 2, 23

19 U.S.C. § 1337(h) .......... 2

28 U.S.C. § 1295(a)(6) .......... 2, 3

Administrative Procedure Act .......... *passim*

**Other Authorities**

19 C.F.R. § 210.4(c) .......... 27

19 C.F.R. § 210.4(c) .......... 26, 27

19 C.F.R. § 210.4(d) .......... 26, 27

19 C.F.R. § 210.4(d)(1)(i) .......... *passim*

19 C.F.R. § 210.4(d)(1)(ii) .......... *passim*

Federal Rule of Appellate Procedure 32(a)(5)-(6) .......... 35

Federal Rule of Appellate Procedure 32(a)(7)(B) .......... 35

Federal Rule of Appellate Procedure 32(f) .......... 35

Federal Rule of Appellate Procedure 32(g)(1) .......... 35

Rule 25.1(c)(1) .......... 36

Rule 25.1(e)(2) .......... 36

Rule 32(b)(1) .......... 35

Rule 32(b)(2) .......... 35

Rule 32(b)(3) .......... 35

U.S. Patent No. 10,212,486....................................................................10, 13, 20

## STATEMENT OF RELATED CASES

This is an appeal from a final determination of the International Trade Commission ("Commission"). DivX, LLC ("DivX") initiated this action by filing a complaint with the Commission against Realtek Semiconductor Corp. ("Realtek"). The complaint alleged that certain processors that Realtek sells for use in smart televisions infringed DivX's patents. DivX's complaint also accused processors sold by MediaTek Inc., MediaTek USA Inc., and MStar Semiconductor, Inc. (collectively, "MediaTek"). In addition to targeting Realtek and MediaTek, DivX sued three sets of companies that allegedly used the accused processors in their smart televisions: (1) Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Electronics HCMC CE Complex, Co. Ltd. (collectively, "Samsung"); (2) LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively, "LG"); and (3) TCL Corporation, TCL Technology Group Corporation, TCL Electronics Holdings Limited, TTE Technology, Inc., Shenzhen TCL New Technologies Co. Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL MOKA International Limited, and TCL Smart Device (Vietnam) Co., Ltd (collectively, "TCL").

Along with its ITC complaint, DivX sued Realtek and LG in the U.S. District Court for the District of Delaware. *See DivX, LLC v. LG Elecs. Inc.*, No. 20-cv-1202-CFC-JLH (D. Del.). The district court action involves the same allegations of

patent infringement that were at issue before the Commission. On June 3, 2021, the U.S. Magistrate Judge assigned to the district court case stayed all proceedings pending resolution of proceedings before the Commission. *Id.* Dkt. No. 55.

## JURISDICTIONAL STATEMENT

In response to DivX's complaint, the Commission instituted Investigation Number 337-TA-1222. During the Investigation, Realtek asked the Administrative Law Judge ("ALJ") to award sanctions against DivX pursuant to 19 C.F.R. § 210.4(d)(1)(i) and to issue an order to show cause, pursuant to 19 C.F.R. § 210.4(d)(1)(ii). On April 22, 2022, in Order No. 75, the ALJ denied Realtek's request for sanctions but did not rule on Realtek's request for an order to show cause. *See* Appx2232-2233. On August 24, 2022, the Commission "determined not to review, and thus adopt[ed], Order No. 75[.]" Appx0017. The Commission Opinion and its Notice both state that its rulings are a "determination" of the Commission, and they are the Commission's final action on Realtek's request. Accordingly, they are final determinations under Section 19 U.S.C. § 1337(h) and 28 U.S.C. § 1295(a)(6) and subject to this Court's jurisdiction.

The Commission's determination is reviewable under the Administrative Procedure Act pursuant to Section 337(c). *See* 19 U.S.C. § 1337(c) ("Determinations by the Commission under . . . subsection (h) with respect to the imposition of sanctions . . . shall also be reviewable in accordance with section 706

of title 5."). The Commission's sanctions order was a final determination relating to both DivX's allegations of unfair practices on Realtek's part and Realtek's allegations, set forth in its motion for sanctions, of DivX's unfair practices. This Court therefore has jurisdiction pursuant to 28 U.S.C. § 1295(a)(6); *see also Viscofan, S.A. v. U.S. ITC*, 787 F.2d 544, 552 (Fed. Cir. 1986) (holding that the Commission's "determinations," once they are final, are reviewable by the Federal Circuit). Realtek timely filed a petition for review on October 21, 2022.

## STATEMENT OF THE ISSUES

1. Whether the Commission violated the APA when it completely ignored Realtek's request for an order to show cause, pursuant to 19 C.F.R. § 210.4(d)(1)(ii), to address sanctionable misconduct that was not revealed until the evidentiary hearing and therefore could not practically be addressed through a sanctions motion pursuant to 19 C.F.R. § 210.4(d)(1)(i).

2. Whether the Commission violated the APA when it departed from its rulings in prior adjudications. In prior investigations, unlike in this Investigation, the Commission's ALJs and the Commission expressly considered and decided whether to invoke their authority under 19 C.F.R. § 210.4(d)(1)(ii) to address sanctionable misconduct after determining that such misconduct could not be, or had not been, properly challenged pursuant to 19 C.F.R. § 210.4(d)(1)(i).

## INTRODUCTION

This appeal—which addresses a basic violation of administrative law—also raises a more fundamental issue: Complainants who bring patent infringement claims before the Commission are increasingly abusing that forum. Many complainants fail to provide the required factual support for their claims, and once their initial theories are shown to be baseless, they attempt to shift theories well after the governing deadlines. In the Investigation before the Commission under review, DivX, LLC brought numerous claims that were unsupported and unsupportable. It dropped some of those claims as the Investigation proceeded, and when its remaining claims were foreclosed by the rulings of the Administrative Law Judge, DivX tried to shift theories. The ALJ granted a motion *in limine*, excluding the new theory. Rather than accept defeat, however, DivX chose to present false and misleading testimony, and to make false and misleading representations, to the ALJ in hopes of convincing her that it had pursued its new theory all along.

DivX's misconduct was not revealed until the evidentiary hearing, but by that time, DivX had already withdrawn all of its claims against Realtek Semiconductor Corp. Realtek therefore could not serve an ordinary sanctions motion under 19 C.F.R. § 210.4(d)(1)(i) and provide a safe harbor for DivX to withdraw its claims against Realtek prior to filing the motion. Accordingly, Realtek not only filed an ordinary sanctions motion, but also asked the ALJ for an order to show cause under

19 C.F.R. § 210.4(d)(1)(ii), in case that was the only realistic way to address the misconduct revealed at the hearing. The ALJ did not address the request under 19 C.F.R. § 210.4(d)(1)(ii), even though the Commission has a well-established history of considering such motions on the merits. Realtek petitioned for review, but the Commission adopted the ALJ's ruling without further comment.

By refusing to engage in reasoned decision-making, and by treating this Investigation differently than other investigations, the Commission violated the Administrative Procedure Act ("APA"). But the Commission's failures are more profound. They encourage the bad behavior that is of growing concern to Realtek and others. Realtek generally does not seek sanctions to enrich itself. It has long said that it will donate the sanctions it recovers to those in need, in Washington D.C., who suffer from price increases caused, in part, by meritless litigation of the type at issue in this Investigation. Realtek brought its motion, and pursues this appeal, in hopes of vindicating the purpose of an award of sanctions: to educate, to deter, and to punish misconduct that threatens the integrity of the Commission's proceedings.

## STATEMENT OF THE CASE

### I. Procedural Posture

Throughout the proceedings before the Commission, Realtek informed DivX that its claims against Realtek lacked support and were baseless. Realtek nonetheless deferred filing a motion for sanctions, until it could confirm that DivX

had indeed engaged in the type of truly egregious misconduct that warranted sanctions.

On the eve of the evidentiary hearing before the ALJ, DivX withdrew its complaint against Realtek, and the ALJ orally granted an order and instructed Realtek that it did not need to participate in the hearing.[1] The hearing therefore proceeded only against TCL,[2] which is one of the companies that used Technical CBI [redacted] in some of its accused products. During the hearing, it became clear that DivX had indeed engaged in serious misconduct with respect to its claims against Realtek. Although DivX had dismissed all claims against Realtek, the remaining respondent, TCL, used both [redacted] Technical CBI and TCL's use of Technical CBI [redacted] was the basis for the subset of claims DivX had asserted against both TCL and Realtek. Accordingly, DivX's claims against Realtek were indirectly adjudicated at the hearing.

The facts presented at the hearing revealed that DivX had presented false and misleading testimony, and had made false and misleading representations, during the Investigation, and that misconduct had seriously prejudiced Realtek. Because

[1] DivX initially had sought agreement from Realtek that it would not use the withdrawal of the complaint as a basis for seeking sanctions, but Realtek declined that request. Appx2030; Appx2368. DivX chose to withdraw the complaint against Realtek, which Realtek did not oppose because of its obligation to mitigate the harms suffered from DivX's pursuit of meritless claims against Realtek.

[2] The other respondents had previously reached an agreement with DivX through which their claims were resolved.

Realtek had been dismissed from the case prior to the misconduct coming fully to light, the Commission's rules regarding sanctions—including the requirement to serve the motion and wait 7 days before filing it to determine if DivX would withdraw its claims—did not clearly apply. Accordingly, Realtek not only moved for sanctions under Commission Rule 210.4(d)(1)(i), but also asked the ALJ to issue an order to show cause under Commission Rule 210.4(d)(1)(ii).

Realtek filed its motion for sanctions on October 4, 2021. Realtek filed its motion about 2.5 months after the hearing because Realtek's "'[lead counsel's] mother had a stroke during the hearing,' which prevented him from 'provid[ing] the information needed to finalize and file the motion earlier.'" Appx2350. Realtek's motion was nonetheless submitted 6.5 months before the deadline the ALJ set for the Initial Determination. *See* Appx2228 (setting April 19 as "[t]he date for the issuance of the ID"). There has been no suggestion, and the Commission did not rule, that any part of the Investigation would have proceeded differently had Realtek filed its motion for sanctions immediately after learning, at the hearing, of the false representations or if Realtek had provided advance notice before filing its motion, given that the complaint had already been withdrawn.

Realtek's motion for sanctions explicitly invoked the ALJ's authority to issue an order to show cause, and to impose sanctions, pursuant to Commission Rule 210.4(d)(1)(ii). Appx2043. Realtek argued that the safe harbor provision in

Commission Rule 210.4(d)(1)(i) did not apply and did not prevent the ALJ from having jurisdiction to award sanctions on Realtek's motion because tribunals always have authority to address misconduct that occurred before them even if the complaint already has been withdrawn. Appx2351-2352; Appx2043.[3] Realtek also explained to the Commission that, in prior cases, ALJs routinely considered and granted parties' requests to invoke Commission Rule 210.4(d)(1)(ii) to address sanctionable misconduct when Commission Rule 210.4(d)(1)(i) did not apply. *See* Appx2359. In Realtek's reply in support of its motion for sanctions, Realtek again identified Commission Rule 210.4(d)(1)(ii) as a primary basis for its motion and reiterated that tribunals have authority to address misconduct that occurred before them under Commission Rule 210.4(d)(1)(i)-(ii), even though a case already has been dismissed. *See* Appx2212-2213. As Realtek explained, "Commission Rules provide the ALJ with full authority to police misconduct before her." Appx2212 (quoting 19 C.F.R. § 210.4(d)(1)(ii), which provides "[t]he administrative law judge or the Commission

[3] Realtek cited, among other authority, *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1155 (Fed. Cir. 2017) ("[A]fter the merits of a case are dismissed, a district court retains jurisdiction over whether to grant sanctions."); *ED Cap., LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 80-81 (S.D.N.Y. 2016) (stating that the court retains jurisdiction to determine appropriateness of sanctions after underlying action is dismissed). Appx2351.

may enter an order *sua sponte* describing the content that appears to violate paragraph (c) of this section").[4]

The ALJ deferred consideration of Realtek's motion until she issued the Initial Determination. On that day, April 22, 2022, the ALJ denied Realtek's motion purely on procedural grounds. The order denied Realtek's request for relief because Realtek did not comply with the safe harbor provision of Commission Rule 210.4(d)(1)(i). Appx2231-2235. The ALJ did not address Realtek's request for an order to show cause, pursuant to Commission Rule 210.4(d)(1)(ii). *Id.* Nor did the ALJ address whether the safe harbor rule in Commission Rule 210.4(d)(1)(i) allowed Realtek's request for sanctions based on conduct that was only revealed *after* DivX already had withdrawn its complaint against Realtek. Appx2234-2236.

On June 1, 2022, Realtek filed a Petition for Review of Order No. 75. On June 8, 2022, DivX filed its opposition to Realtek's petition. On August 24, 2023, the Commission issued an opinion in which it "determined not to review, and thus adopt[ed], Order No. 75 denying Realtek's motion for sanctions, without further amendment or comment." Appx00017. Realtek timely sought this Court's review.

## II. Realtek's Discovery of DivX's Sanctionable Misconduct

### A. DivX's February 8 Contentions, its New Infringement Theory Disclosed on April 8, and the ALJ's Order Excluding the New Theory

[4] The ALJ did not rule on Realtek's request for leave to submit a reply in support of its motion for sanctions (Appx2216-2220.

On February 8, 2021, DivX provided its infringement contentions. Those contentions made no reference to "[redacted]" as satisfying the important "deciphering" limitation of the only patent asserted against Realtek through the end of the Investigation: U.S. Patent No. 10,212,486 (Appx0027-0052). To the contrary, as the ALJ would later recount when precluding testimony related to the [redacted] theory, DivX had pursued a different, [redacted] theory" of deciphering throughout fact discovery. That [redacted] theory focused on the [redacted].

For reference, the "[redacted]" is highlighted in lime green on the DivX demonstrative slide from the evidentiary hearing, Appx1499, which is reproduced below:

Technical CBI [redacted]

As the ALJ would later agree, the "Technical CBI [redacted]" theory was a "material change" from the prior "Technical CBI [redacted]" theory. *See* Appx2031. As the ALJ explained, on April 8, 2021, DivX contended, for the first time, that "just 1 step in the [redacted] Technical CBI [redacted] procedure" would satisfy the deciphering step. *Id.* Thus, as the ALJ further recounted, DivX "materially changed its focus and theory." *Id.*

DivX's separate "Technical CBI [redacted]" theory is also illustrated in the slide above. In particular, the Technical CBI [redacted] labeled Technical CBI [redacted] in the diagram identifies the newly identified infringing functionality, which is entirely separate from the formerly accused "Technical CBI [redacted]" portion of Technical CBI [redacted]. DivX abandoned its old Technical CBI [redacted] theory in favor of the new Technical CBI [redacted] theory because of the ALJ's *Markman* order. The ALJ issued her *Markman* order on March 12, 2021. That

ruling confirmed that DivX had no claim against Realtek. Specifically, the ALJ construed “deciphering” as Technical CBI [redacted]” Appx0144. The ALJ also adopted the parties’ agreed construction of “Technical CBI [redacted]” as a Technical CBI [redacted] Technical CBI [redacted]” Appx0116. Those rulings precluded DivX’s Technical CBI [redacted] and Technical CBI [redacted] theories from satisfying the “deciphering” limitation.

Rather than dropping its case, DivX moved to its new theory and contended that it had always been pursuing the Technical CBI [redacted] theory. The timing of this misstatement is not an accident. As noted, DivX disclosed the new Technical CBI [redacted] theory on April 8, 2021. Appx1038-1042; Appx1044-1045. That was just two days after DivX received Respondents’ April 6, 2021 notice that they would be pursuing sanctions against DivX if it pursued its Technical CBI [redacted] theory, and it was DivX’s “defense” to the Respondents’ showing that DivX’s contentions for the deciphering limitation were frivolous under the Technical CBI [redacted] theory. Appx2433-2434; Appx2440-2441.

Because the new, Technical CBI [redacted] theory was untimely, Realtek moved *in limine* to preclude it on June 7, 2021, and the ALJ granted that motion on July 1.

Appx1338-1339.[5] The ALJ sent the parties an email explaining her ruling that "DivX is precluded from introducing testimony, arguments or opinion with respect to the '486 patent that its [redacted]' theory satisfies the limitation of 'deciphering a frame key for each partially encrypted frame.'" Appx1338. The ALJ likewise stated that [redacted] was a new theory first disclosed "on April 8, 2021, long after the February 8, 2021 contention deadline, and after the close of the extended fact discovery of March 26, 2021." Appx1338. The ALJ also explained, in detail, why the [redacted] theory was "not what DivX argued before the March 12, 2021 *Markman* construction Order issued or in its February 8, 2021 infringement contentions." Appx1338. Moreover, she explained why she rejected DivX's argument that its "old '[redacted]' theory" is "tied into [] its and Dr. Reinman's April 8, 2021 disclosure" of the [redacted]" theory. Appx1338.

DivX moved for reconsideration, and the ALJ denied that motion on July 1, 2021. Appx1369 (Tr. 29:7-12) (ALJ). The ALJ explained that she had advised counsel for several years, and had amended her ground rules, because there were "too many infringement contentions . . . that aren't explicit enough." Appx1367 (Tr. 27:16-18) (ALJ). She also reiterated her ruling (summarized in her prior email communication), explaining that DivX had not disclosed a [redacted] theory and

[5] The ALJ's ruling was in email form but reproduced in TCL's Motion To Strike Objectionable Demonstratives of Dr. Glenn Reinman and Preclude Related Testimony. Appx1602-1603; *see also* Appx1102-1337.

would therefore be limited to "its first infringement theory." Appx1368 (Tr. 8:5) (ALJ). DivX would be allowed only to explain "what constitutes the Technical CBI [redacted] theory, which was what was initially argued." Appx1369 (Tr. 29:1-6) (ALJ). The ALJ went on to hold that the relief Respondents had sought in precluding the Technical CBI [redacted] theory was "narrowly framed and focused." Appx1368 (Tr. 28:18-19) (ALJ). Accordingly, the ALJ denied the motion for reconsideration and clarified that DivX would only be allowed to put in the Technical CBI [redacted] theory disclosed in its contentions. Appx1369 (Tr. 29:23–25) (ALJ). Because DivX said that it had been pursuing, and had disclosed, its new Technical CBI [redacted] theory, and the ALJ believed she needed a fuller record to determine what DivX had actually disclosed, she allowed DivX to try to demonstrate at the evidentiary hearing that it had disclosed its Technical CBI [redacted] theory as part of its Technical CBI [redacted] theory.

Thus, the ALJ allowed DivX to present evidence that its February 8 disclosures actually identified its Technical CBI [redacted] theory of infringement. But DivX had no such evidence. Rather than conceding the issue and saving the parties substantial fees and costs, or relying only on what was supportable, DivX chose to provide false and misleading representations and testimony at the evidentiary hearing. In particular, the evidence showed that DivX had made a slew of false representations, both before and during the hearing, when it asserted that: (1) it had been pursuing Technical CBI [redacted] as a theory of Technical CBI [redacted] since at least February 4, 2021, and (2) it

had disclosed everything it could regarding [redacted] theory, and it could not disclose specifics because it had not received the discovery necessary. It was not until the hearing that Realtek obtained evidence showing that these representations were false, seemingly deliberately so, and apparently were designed to deceive the ALJ.

### B. The Evidence, Revealed at the Hearing, that DivX Made False Representations When it Said it Was Pursuing [redacted] as its Theory of Infringement

Technical CBI

The hearing evidence showed that DivX concocted its [redacted] theory in mid-March 2021, and it was not pursuing that theory as of February 2021, as DivX had falsely represented to the ALJ. DivX's expert, Dr. Reinman, admitted on the stand that the precise implementation details of [redacted] were *critical* to his infringement analysis. But he was forced to admit on cross-examination that he did not investigate [redacted] prior to the *Markman* order in March 2021. In particular, he admitted, on cross-examination, that he "wouldn't know how [redacted] worked" without the [redacted]:

[redacted]

Appx1855 (Tr. 878:13-21) (Reinman).

If [redacted] had been part of DivX's infringement case, it undeniably would have needed to request the [redacted]. But Dr. Reinman admitted that he did not even try to obtain the [redacted] until after the ALJ's claim construction order. Dr. Reinman conceded he knew [redacted] before February 4. Appx1858 (Tr. 881:1-5) (Reinman). He also testified that he had open lines of communication with DivX's counsel, he "could have *absolutely* suggested things" to include in the contentions, and he explicitly and personally worked on the infringement contentions. Appx1860 (Tr. at 882:17-883:8 (emphasis added) (Reinman); Appx1867 (Tr. 890:20-22) (Reinman) (Dr. Reinman agreeing that he "help[ed] DivX prepare infringement contentions for this case[.]"). Yet DivX did not name the [redacted] in its contentions[6], and

[6] Dr. Reinman said he had no recollection of whether [redacted] was cited in the contentions. Appx1855 (Tr. 878:8-12) (Reinman). In fact, DivX's contentions show that it did not identify the [redacted]

DivX did not even *request* the [redacted] [redacted] [redacted] until March 22, 2021, well after the ALJ's claim construction ruling on March 12 and well after the contentions supplementation on March 15. Appx1857 (Tr. 880:3-25) (Reinman).

### C. The Testimony Revealed that DivX's Reliance on Discovery Problems as the Basis for its Non-Disclosure Was Baseless

DivX represented to the ALJ that discovery problems prevented it from disclosing its [redacted] [redacted] [redacted] that contain [redacted]. DivX's arguments rest on three representations by DivX's counsel and its expert Dr. Reinman: (1) DivX did not have the [redacted] until March 1; (2) regardless of when DivX had the [redacted], DivX had no reason to look at that [redacted] prior to March 1; and (3) DivX needed the [redacted] [redacted] to be able to disclose [redacted] as its theory of [redacted]. The hearing confirmed that each of those representations was false.

DivX represented, at the hearing, that it did not have the relevant [redacted] [redacted] until March 1, and it was only then that Dr. Reinman could "find" [redacted] in that [redacted]. DivX's deceptive question, and the first part of Dr. Reinman's answer, are below:

---

by name or say anything about [redacted]. *See, e.g.*, Appx0751-0783.

Technical CBI [redacted]

Appx1762-1763 (Tr. 785:23-786:6) (Reinman). In reality, the Technical CBI [redacted] was made available far earlier, as Dr. Reinman was forced to admit. In particular, Dr. Reinman conceded on cross-examination, that he had reviewed that same Technical CBI [redacted] no later than February 4. Appx1840-1845 (Tr. 863:11-868:13) (Reinman); Appx1847 (Tr. 870:3-11) (Reinman); Appx1704-1710 (showing that DivX requested and reviewed the 3rd Party Technical CBI [redacted] no later than February 4 and it was hand delivered in hard copy no later than February 8.).

When confronted with that information, Dr. Reinman provided a second piece of deceptive testimony on this issue. He falsely testified that he had no reason to

examine the [redacted] prior to March 1 because “there was no way to know that [its [redacted]] functions were used.” Appx1841 (Tr. 864:20-22) (Reinman). But again, as Dr. Reinman was forced to concede on cross-examination, he knew by February 4 that the *same* [redacted] at issue was used to perform [redacted]. Appx1847-1848 (Tr. 870:18-871:8) (Reinman). (Recall that “[redacted]” is the new theory of infringement DivX raised in April of 2021 in place of the previously pursued [redacted] theory.) Confronted with this contradiction, he pretended not to remember the [redacted] and suggested that he and DivX had actually disclosed [redacted] for the relevant [redacted]. Appx1848 (Tr. 871:3-8) (Reinman). That, too, was false. The [redacted] *do not even mention* the [redacted] when discussing [redacted]. Appx0307-0330.

In an effort to overcome these falsehoods, Dr. Reinman pretended that the issue regarding the [redacted] was whether he should have assumed that [redacted] Appx1848 (Tr. 871:13-20) (Reinman). That was a further attempt at falsity and misdirection. DivX and Dr. Reinman knew that the [redacted] at issue was used to perform [redacted] in certain [redacted], and he knew that no later than February 4. Yet DivX did not identify that [redacted] in its infringement contentions for [redacted]. If DivX had been

pursuing its Technical CBI [redacted] theory, it would have identified that file in its contentions for the 3rd Party Product [redacted]. Thus, contrary to Dr. Reinman's testimony, nothing changed regarding his ability to identify the Technical CBI [redacted] as allegedly infringing when Dr. Reinman learned that the same Technical CBI [redacted] was *also* used in another set of 3rd Party Product and Technical CBI [redacted].

Dr. Reinman's suggestion, at the hearing, that the use of the Technical CBI [redacted] in the 3rd Party Product [redacted] was irrelevant is especially misleading and untruthful because Dr. Reinman *explicitly relied on* 3rd Party Technical CBI [redacted] use of the same [redacted] as support for his opinions regarding the 3rd Party Product [redacted]. In particular, Dr. Reinman admitted on cross examination that he relied on the Technical CBI [redacted] as used in the 3rd Party Product [redacted] as "exemplary" and as proof that 3rd Party Product [redacted] allegedly practiced the '486 patent. Appx1878 (Tr. at 901:5-24) (Reinman).

Finally, there was a third deception, which is arguably the worst. DivX represented that it needed the Technical CBI [redacted] to disclose Technical CBI [redacted] as a theory of Technical CBI [redacted]. Indeed, as shown above, DivX tried to blame the delay in production of certain Technical CBI [redacted] (which *did not* include the Technical CBI [redacted] itself because it had been produced earlier) as a justification for the failure to disclose Technical CBI [redacted]. *See supra* pp. 17-19. But Dr. Reinman testified that he had Technical CBI [redacted] in January 2021, and Realtek's technical witness was examined on that Technical CBI [redacted] at his January 22 deposition. Appx1755-1756 (Tr. 778:25-779:19) (Reinman).

That Technical CBI [redacted] likewise implements the Technical CBI [redacted], including the Technical CBI [redacted] step. Dr. Reinman was forced to admit at the hearing that the Technical CBI [redacted]—which he had for months—also implemented the allegedly infringing Technical CBI [redacted]. Appx1880-1881 (Tr. 903:13-904:10) (Reinman) (identifying the Technical CBI [redacted] as one of "multiple implementations that all would infringe *were they used*") (emphasis added). Thus, Dr. Reinman had everything he needed to disclose Technical CBI [redacted] by January 2021 but failed to do so. His testimony to the contrary was demonstrably false.

Moreover, Dr. Reinman conceded on cross-examination that he also built his infringement arguments related to the Technical CBI [redacted] theory on *publicly available* Technical CBI [redacted] from 2003. In particular, Dr. Reinman testified that his report relies upon and reproduces portions of 2003 Technical CBI [redacted] Technical CBI [redacted]" Appx1860 (Tr. 883:21-24) (Reinman); Appx1862-1863 (Tr. 885:22-886:20) (Reinman); Appx1719. He testified that he was aware of that 2003 document, and the Technical CBI [redacted] he cited, well before this Investigation started. Appx1867 (Tr. 890:11-19) (Reinman). He easily could have disclosed that Technical CBI [redacted], if implemented as he expected, was infringing, but he chose not to do so. In short, the trial testimony revealed that DivX's position that it needed particular discovery from Realtek, which was delayed, in order to be able to disclose its Technical CBI [redacted] theory was demonstrably false. In every way possible, the hearing

revealed that DivX had made a wide-ranging series of false representations to the ALJ.

## SUMMARY OF THE ARGUMENT

The Commission erred in two ways. First, the Commission acted arbitrarily and capriciously by failing to address Realtek's request for relief under 19 C.F.R. § 210.4(d)(1)(ii). That provision allows the Commission, and its ALJs, to address sanctionable conduct by issuing an order describing the specific conduct that appears sanctionable and directing an attorney, law firm, party, or proposed party to show cause why it has not violated the Commission Rules. The Commission and its ALJs regularly use 19 C.F.R. § 210.4(d)(1)(ii) to address sanctionable conduct raised by a party that has not, or cannot, comply with 19 C.F.R. § 210.4(d)(1)(i). But here, the ALJ did not address Realtek's request. She abused her discretion by failing to exercise it. She held that the merits of Realtek's request "need not be reached" because she determined that Realtek's separate request—under a different provision, 19 C.F.R. § 210.4(d)(1)(i)—was procedurally barred. Appx2232-2233. In doing so, she candidly acknowledged that she did not consider the merits of Realtek's request, the merits of its arguments in favor of sanctions, or the need for considering Realtek's request pursuant to 19 C.F.R. § 210.4(d)(1)(ii). The Commission adopted her ruling without comment.

In doing so, the Commission violated the well-established rule that ignoring a party's arguments and requests for relief violates the APA. By refusing to address the issues Realtek presented in its underlying motion for sanctions, the Commission failed to engage in reasoned decision-making, and deprived this Court of a decision to review. The Commission therefore acted arbitrarily and capriciously.

Second, the Commission acted arbitrarily and capriciously by treating like cases differently. As detailed below, the Commission repeatedly has entertained requests, under 19 C.F.R. § 210.4(d)(1)(ii), to address sanctionable misconduct when a motion for sanctions under 19 C.F.R. § 210.4(d)(1)(i) is unavailable. The Commission may not depart from its prior rulings without adequately explaining the basis for that departure. As courts have held, it is a bedrock principle of administrative law that agencies must treat like cases alike. Here, the Commission did not justify, or even attempt to explain, its decision to depart from the many prior rulings in which the Commission and its ALJs have considered requests for an order to show cause under § 210.4(d)(1)(ii). Such unexplained inconsistency between like cases violates the APA.

## STANDARD OF REVIEW

This Court reviews the Commission's determinations on matters related to sanctions under the standards of the APA. 19 U.S.C. § 1337(c); 5 U.S.C. § 706(2). The decision to impose or refrain from imposing sanctions is reviewed for abuse of

discretion. *Arunachalam v. Int'l Bus. Mach. Corp.*, 989 F.3d 988, 996 (Fed. Cir. 2021). Refusal to exercise discretion, however, is an abuse of discretion. *See Craig v. Merit Sys.Prot. Bd.*, 44 F. App'x 465, 467, 2002 WL 1822271, at *2 (Fed. Cir. 2002) ("When the Board decides not to exercise its discretion . . . we review the Board's decision for abuse of discretion.").[7] Whether an agency followed its own, prior rulings is reviewed for a reasoned explanation; the absence of such a reasoned explanation requires remand. *Sw. Airlines Co. v. FERC*, 926 F.3d 851, 856 (D.C. Cir. 2019) ("[H]owever the agency justifies its new position, what it may not do is 'gloss[] over or swerve[] from prior precedents without discussion.'") (quoting *Greater Bos. Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)); *see also Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983) (holding that "an agency changing its course must supply a reasoned analysis" and finding "that the agency has failed to supply the requisite reasoned analysis") (internal citations omitted).

---

[7] *See also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776 (Fed. Cir. 2019) (noting that it "is an abuse of discretion (because it is a failure to exercise discretion at all)," when an order is issued without "accompanying rationale"); *Brooking v. Branham*, 727 F. App'x 884, 885-86 (7th Cir. 2018) ("A judge's failure to exercise discretion is an abuse of discretion."); *Fuller v. Whitaker*, 914 F.3d 514, 521 (7th Cir. 2019) (holding that an agency abuses its discretion when it refuses to consider the evidence submitted in support of a request for the agency "to exercise its *sua sponte* authority").

## ARGUMENT

### I. The Commission Acted Arbitrarily and Capriciously By Failing to Address Realtek's Request for Relief Under 19 C.F.R. § 210.4(d)(1)(ii).

Commission Rules provide two avenues for allowing an ALJ to address sanctionable misconduct. The first, set forth in 19 C.F.R. § 210.4(d)(1)(i), is initiated by a party's motion, and it has certain procedural requirements, including serving the motion at least seven days before filing to allow the offending party to withdraw or correct "the challenged paper, claim, defense, contention, allegation, or denial." *Id.* In some circumstances, section 210.4(d)(1)(i) is inapposite. Here, for example, DivX presented false and misleading testimony and representations that significantly harmed Realtek and the integrity of the Commission's proceedings but came to light only *after* DivX had withdrawn its complaint against Realtek. *See supra* pp. 7-9. Thus, there were no papers, claims, defenses, contentions, allegations, or denials against Realtek that it could demand DivX withdraw. Accordingly, and at a minimum, Commission Rules provide a second mechanism for addressing sanctionable misconduct. That second mechanism, 19 C.F.R. § 210.4(d)(1)(ii), allows the ALJ or Commission to take the initiative. Under that second mechanism, the ALJ or Commission issues an order "describing the specific conduct that" appears sanctionable "and directing an attorney, law firm, party, or proposed party to show cause why it has not violated" the Commission Rules. *Id.*

The Commission and its ALJs regularly use 19 C.F.R.§ 210.4(d)(1)(ii) to address sanctionable conduct raised by a party that has not, or cannot, comply with 19 C.F.R. § 210.4(d)(1)(i). For example, in *Certain Point of Sale Terminals and Components Thereof*, Inv. No. 337-TA-524, Order No. 40 (Apr. 11, 2005), the ALJ decided that "the motions for sanctions must be denied because Respondents are procedurally barred from moving for sanctions . . . because of their failure to comply with the safe harbor provisions of Commission Rule 210.4(d)," but the ALJ likewise held that "a show cause order is warranted, given the serious allegations." *Id.* at 1. Likewise, in *Certain Blood Separation and Cell Preparation Devices*, Inv. No. 337-TA-1147, Order No. 16 (Dec. 20, 2019), the ALJ entertained a respondent's motion for an order to show cause.

The same occurred in *Certain Blowers and Components Thereof*, Inv. No. 337-TA-1217, Order No. 31 (Oct. 20, 2021), where Respondents filed a motion before ALJ McNamara (the same ALJ who signed Order No. 75 at issue in the instant matter) requesting sanctions under 19 C.F.R. § 210.4(d), and Judge McNamara determined that the motion under 19 C.F.R. § 210.4(d)(1)(i) was untimely but nonetheless granted the request under 19 C.F.R. § 210.4(d)(1)(ii) and ordered the Complainant to "show cause why sanctions should not be imposed on Regal as a Party, or on its Counsel, pursuant to 19 C.F.R. § 210.4(c)[.]" *Id.* at 1. On

review, the Commission reversed and remanded Order No. 36, instructing the ALJ to:

> [S]pecify and explain whether she intends that the directives issued . . .—a warning and a direction to redact all misrepresentations in the Enforcement Complaint—constitute nonmonetary sanctions under 19 C.F.R. § 210.4(c) and (d); and, if so, to (1) specify whether the directives in Order 36 were issued pursuant to 19 C.F.R. § 210.4(d)(1)(i) or (ii); and (2) identify the attorneys, law firms, or parties that have violated 19 C.F.R. 210.4(c) or are responsible for the violation, and to whom the sanctions apply[.]

*Id.* Thus, the Commission confirmed that parties may obtain relief by asking the ALJ or Commission to address sanctionable misconduct pursuant to the authority they have under subsection (ii), even when relief under subsection (i) is not permitted.

Finally, there are other cases in which the Commission's ALJs have noted and resolved a request for an order to show cause. For example, in *Certain Coaxial Cable Connectors and Components Thereof and Products Containing Same*, Inv. No. 337-TA-938, Order No. 10 (Sept. 25. 2015), the ALJ noted that Respondent Corning Optical Communications RF LLC had requested "an order to show cause pursuant to Commission Rule 210.4(d)(1)(ii)." *Id.* at 1. The ALJ denied that order because Corning, unlike Realtek here, had not identified "any specific conduct" alleged to be sanctionable. *Id.* But the ALJ considered the request on its merits.

In short, it is well established that the Commission and its ALJs allow parties to move for an order to show cause and rule on such requests on their merits. Such

requests are directed to the discretion of the ALJ or Commission, but they must be addressed.

Likewise, the ALJ did not consider whether a motion for sanctions was permissible, under 19 C.F.R. § 210.4(d)(1)(i), because the safe harbor provision could not apply. As mentioned, DivX withdrew its complaint against Realtek prior to the misconduct at issue coming to light. *See supra* pp. 7-9. In such circumstances, a party must be able to bring sanctionable misconduct to the attention of the tribunal and to seek appropriate relief.

It is well established that a judge abuses her discretion when she fails to exercise it. *See, e.g.*, *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993) (explaining that a judge abuses her discretion "in a failure or refusal, either express or implicit, actually to exercise discretion"); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776 (Fed. Cir. 2019) (noting that it "is an abuse of discretion (because it is a failure to exercise discretion at all)," when an order is issued without "accompanying rationale"); *Brooking v. Branham*, 727 F. App'x 884, 885-86 (7th Cir. 2018) ("A judge's failure to exercise discretion is an abuse of discretion."); *see also Fuller v. Whitaker*, 914 F.3d 514, 521 (7th Cir. 2019) (holding that an agency abuses its discretion when it refuses to consider the evidence submitted in support of a request for the agency "to exercise its *sua sponte* authority").

Here, the ALJ abused her discretion by failing to exercise it. She held that the "merits" of any of Realtek's sanctions arguments "need not be reached." Appx2232-2233. In doing so, she candidly acknowledged that she did not consider Realtek's request, the merits of its arguments in favor of sanctions, or the need for considering Realtek's request pursuant to 19 C.F.R. § 210.4(d)(1)(ii) given the unusual procedural posture of the case. The Commission adopted her ruling without comment.

Courts have long held that ignoring arguments and requests for relief violates the APA. *See Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (agency's failure to respond to "arguments, which do not appear frivolous on their face and could affect the . . . ultimate disposition," is arbitrary); *see also Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action[.]"); *Kakar v. USCIS*, 29 F.4th 129, 133-35 (2d Cir. 2022) (reversing the agency's conclusion because there was not sufficient evidence that the "agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action"); *Pub. Citizen, Inc. v. F.A.A.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately *explain* its result.") (emphasis added); *Tex Tin Corp. v. U.S. E.P.A.*, 935 F.2d 1321, 1324 (D.C. Cir. 1991) ("Where the agency has failed to

exercise its expertise or to explain the path that it has taken, we have *no choice but to remand for a reasoned explanation*.") (emphasis added). *See generally Motor Vehicles Manuf. Ass'n*, 463 U.S. at 43 (holding that agencies act contrary to the APA when they "entirely fail[] to consider an important aspect of the problem").

Here, the Commission, in adopting the ALJ's order without comment or amendment, did not address Realtek's request pursuant to 19 C.F.R. § 210.4(d)(1)(ii), the facts raised, or the necessity of using subsection (ii) to address sanctionable misconduct in light of the procedural posture of the case. Nor did it consider whether 19 C.F.R. § 210.4(d)(1)(i) must, or should, be interpreted to allow Realtek's motion in light of the revelations *after* DivX withdrew its complaint. By refusing to address any of those issues, the Commission acted arbitrarily and capriciously and denied this Court an appropriate record for review. Accordingly, the Court should grant Realtek's petition and remand this proceeding to the Commission to address all of Realtek's arguments.

## II. The Commission Acted Arbitrarily and Capriciously By Treating Like Cases Differently.

As discussed, the Commission repeatedly has relied on 19 C.F.R. § 210.4(d)(1)(ii) to address allegedly sanctionable misconduct when it determines that the requesting party failed to satisfy the procedural requirements of 19 C.F.R. § 210.4(d)(1)(i). *See, e.g.*, *Certain Point of Sale Terminals and Components Thereof*, Inv. No. 337-TA-524, Order No. 40 (Apr. 11, 2005); *Certain Blowers and*

*Components Thereof*, Inv. No. 337-TA-1217, Order No. 31 (Oct. 20, 2021); *Certain Blood Separation and Cell Preparation Devices*, Inv. No. 337-TA-1147, Order No. 16 (Dec. 20, 2019). *See generally supra* pp. 26-28.

The Commission may not depart from its prior rulings without adequately explaining the basis for that departure. As courts have held, "[a] fundamental norm of administrative procedure requires an agency to treat like cases alike." *Westar Energy, Inc. v. F.E.R.C.*, 473 F.3d 1239, 1241 (D.C. Cir. 2007). Indeed, courts have referred to this as a "bedrock principle" of administrative law. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. U.S. Dep't of HHS*, 985 F.3d 472, 479 (5th Cir. 2021) (quoting 32 Charles Alan Wright & Charles H. Koch, *Federal Practice and Procedure* § 8248, at 431 (2006)); *see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("Unexplained inconsistency is . . . a reason for holding [agency action] to be . . . arbitrary and capricious."); *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir. 2005) ("An agency must provide an adequate explanation to justify treating similarly situated parties differently."). The obligation to explain departures from precedent arises from the fundamental obligation to engage in reasoned decision-making. *See Michigan v. EPA*, 576 U.S. 743, 750 (2015) ("Federal administrative agencies are required to engage in reasoned decisionmaking. Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches

that result must be logical and rational. It follows that agency action is lawful only if it rests on a consideration of the relevant factors.") (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) and *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43) (internal citations omitted); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dept. of Health and Hum. Servs.*, 730 F.3d 291, 314 (3d Cir. 2013) (holding that the agency's action was arbitrary and capricious because it did not supply a "reasoned basis" for its decision).

Here, the Commission did not justify, or even attempt to explain, the decision to depart from the many prior rulings in which the Commission and its ALJs have considered requests for an order to show cause under § 210.4(d)(1)(ii) when they determine that a motion for sanctions pursuant to § 210.4(d)(1)(i) is unavailable. Such unexplained inconsistency between like cases violates the APA. Accordingly, the Court should grant Realtek's petition and remand this proceeding to the Commission to address Realtek's arguments.

## CONCLUSION

For the foregoing reasons, Realtek respectfully requests that the Court grant its petition and remand to the Commission with instructions to consider the arguments Realtek made to the Commission on their merits.

Dated: April 24, 2023

/s/ *Theodore J. Angelis*
Theodore J. Angelis
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
Phone: +1.206.623.7580
Theodore.Angelis@klgates.com

*Counsel for Appellant Realtek Semiconductor Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, I electronically filed the foregoing Non-confidential Brief of Appellants with the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the CM/ECF system. Pursuant to agreement, the confidential version of the foregoing was also served on counsel for all parties by electronic mail.

*/s/ Theodore J. Angelis*
Theodore J. Angelis

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Circuit Rule 32(b)(3) and Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the typevolume limitations in Federal Circuit Rule 32(b)(1) and Federal Rule of Appellate Procedure 32(a)(7)(B) , because it contains 7,100 words, excluding the exempted parts under Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this brief was prepared using 14-point Times New Roman font.

*/s/ Theodore J. Angelis*
Theodore J. Angelis

## CERTIFICATE OF CONFIDENTIALITY

Pursuant to Federal Circuit Rule 25.1(e)(2), I certify that the foregoing brief contains 39 unique words and 3 images to be marked confidential pursuant to the October 15, 2020 Protective Order entered in the underlying International Trade Commission Investigation and which remains in force pursuant to Federal Circuit Rule 25.1(c)(1)

*/s/ Theodore J. Angelis*
Theodore J. Angelis