**2023-1095**

# United States Court of Appeals for the Federal Circuit

REALTEK SEMICONDUCTOR CORPORATION,

*Appellant,*

– v. –

INTERNATIONAL TRADE COMMISSION,

*Appellee,*

DIVX, LLC,

*Intervenor.*

*On Appeal from the United States International Trade Commission in Investigation in No. 337-TA-1222*

## NON-CONFIDENTIAL BRIEF FOR INTERVENOR

MICHAEL T. RENAUD
ADAM S. RIZK
MATTHEW A. KARAMBELAS
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 542-6000
makarambelas@mintz.com
*Counsel for Intervenor*

ORIGINALLY FILED: AUGUST 21, 2023
CORRECTED: OCTOBER 12, 2023

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 23-1095 |
| **Short Case Caption** | Realtek Semiconductor Corporation v. ITC |
| **Filing Party/Entity** | DivX, LLC |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/21/2022

Signature: /s/ Michael T. Renaud

Name: Michael T. Renaud

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☑ None/Not Applicable | ☑ None/Not Applicable |
| DivX, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P C<br>Michael T Renaud | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P C<br>James M Wodarski | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P C<br>Adam S Rizk |
| MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P C<br>Marguerite McConihe | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P C<br>Matthew A Karambelas | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P C<br>Jessica L Perry |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ A itional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Save for Filing

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ........ 1

COUNTER JURISDICTIONAL STATEMENT ........ 1

COUNTER STATEMENT OF THE ISSUES ........ 3

INTRODUCTION ........ 3

COUNTER STATEMENT OF THE CASE ........ 3

I. Procedural History ........ 4

II. Realtek's Obstructionist Behavior During Discovery ........ 9

III. Realtek Unreasonably Delayed Filing its Sanctions Motion Until Months After It Learned of DivX's Alleged Sanctionable Behavior ........ 15

IV. Realtek's Appeal Mischaracterizes Testimony from Dr. Reinman During the Evidentiary Hearing ........ 17

SUMMARY OF THE ARGUMENT ........ 21

STANDARD OF REVIEW ........ 23

ARGUMENT ........ 26

I. The Commission's Determination Not to Review a Denial of Sanctions Is Not a Final Determination that is Appealable to This Court ........ 26

II. The Commission Did Not Act Incorrectly Fail to Address Realtek's Request for Relief ........ 30

A. Realtek Lacked Standing to Petition the Commission for Review ........ 31

B. The ALJ Did Assess the Merits of Realtek's Motion, Which The Commission Adopted ........ 32

C. The Commission Did Not Treat Realtek's Petition Any Differently than Other Similar Sanctions Motions ........ 35

D. Realtek's Requested Relief—Monetary Sanctions—is Prohibited by the Commission Rules....................................39

III. DivX Did Not Engage In Any Sanctionable Conduct .........................41

CONCLUSION.........................................................................................................49

CERTIFICATE OF COMPLIANCE.......................................................................50

Pursuant to Federal Circuit Rule 25.1(e)(1)(B), Intervenor provides the following description of the general nature of the material redacted in the public version of its brief:

The materials redacted herein comprise confidential business information ("CBI") pursuant to the October 15, 2020 Protective Order entered in the underlying International Trade Commission Investigation and which remains in force pursuant to Federal Circuit Rule 25.1(c)(1). The omitted material contains highly sensitive confidential business and proprietary technological information of Appellant and/or third parties.

Confidential material was redacted from within this brief on the following pages: 4-6, 11-15, 17-21, 41-42, and 44-49.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Data Concepts, Inc. v. United States*,
216 F.3d 1054 (Fed. Cir. 2000) ....................24

*Ala. Aircraft Indus. v. United States*,
586 F.3d 1372 (Fed. Cir. 2009) ....................24

*Amarin Pharma, Inc. v. Int'l Trade Comm'n*,
923 F.3d 959 (Fed. Cir. 2019) ....................2, 28

*Amgen, Inc. v. Int'l Trade Comm'n*,
902 F.2d 1532 (Fed. Cir. 1990) ....................28

*AntiCancer, Inc. v. Pfizer, Inc.*,
769 F.3d 1323 (Fed. Cir. 2014) ....................43

*Block v. U.S. Int'l Trade Comm'n*,
777 F.2d 1568 (Fed. Cir. 1985) ....................2, 27

*Caterpillar Inc. v. Int'l Trade Comm'n*,
837 F. App'x 775 (Fed. Cir. 2020) ....................35

*Cathedral Candle Co. v. Int'l Trade Comm'n*,
400 F.3d 1352 (Fed. Cir. 2005) ....................25, 36

*Certain Automotive GPS Navigation Sys., Components Thereof, and Prods. Containing the Same*,
Inv. No. 337-TA-814, Order No. 8 (May 8, 2012) ....................37

*Certain Blowers and Components Thereof*,
Inv. No. 337-TA-1217, Order No. 31 (Oct. 20, 2021) ....................36

*Certain Integrated Circuit Products and Devices Containing the Same*,
Inv. No. 337-TA-1295, Order No. 11 (Apr. 12, 2022) ....................21, 38

*Certain Power Semiconductor and Mobile Devices and Computers Containing Same*,
Inv. No. 337-TA-1308, Order No. 29 (Nov. 22, 2022) ....................................37

*Certain RF Capable Integrated Circuits and Products Containing the Same*,
Inv. No. 337-TA-982, Order No. 28 (Apr. 3, 2007) ........................................38

*Crucible Materials Corp. v. Int'l Trade Comm'n*,
127 F.3d 1057 (Fed. Cir. 1997) ....................................................................2, 27

*Cunningham v. Hamilton Cnty., Ohio*,
527 U.S. 198 (1999)..........................................................................................27

*Imp. Motors Ltd. v. U.S. Int'l Trade Comm'n*,
530 F.2d 940 (C.C.P.A. 1976) ...........................................................................28

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)............................................................................................24

*PS Chez Sidney, L.L.C. v. Int'l Trade Comm'n*,
684 F.3d 1374 (Fed. Cir. 2012) .........................................................................24

*ROY-G-BIV Corp. v. ABB, Ltd.*,
63 F. Supp. 3d 690 (E.D. Tex. 2014).........................................................43, 45

*Seagate Tech. v. U.S. Int'l Trade Comm'n*,
36 F.3d 1113 (Fed. Cir. 1994) .....................................................................26, 27

*Viscofan, S.A. v. Int'l Trade Comm'n*,
787 F.2d 544 (Fed. Cir. 1986) ...................................................................2, 26, 29

**Statutes**

5 U.S.C. § 706 ...........................................................................................24, 29

19 U.S.C. § 1337 ..................................................................... 1-3, 24, 26-28

28 U.S.C. § 1295 .......................................................................1, 3, 26, 28

## STATEMENT OF RELATED CASES

This appeal results from a final determination of the International Trade Commission ("Commission") in *Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions Containing the Same*, Inv. No. 337-TA-1222 (the "ITC investigation"). DivX also filed a complaint against Realtek and LG in U.S. Court for the District of Delaware, alleging infringement of the same patents as in the ITC investigation. *See DivX, LLC v. LG Elecs. Inc.*, No. 20-cv-1202-CFC-JLH (D. Del.). This district court case is currently stayed pending resolution of proceedings before the Commission. *Id*. at Dkt. No. 55.

## COUNTER JURISDICTIONAL STATEMENT

Contrary to Realtek's assertions, the Commission's decision is not reviewable by this Court pursuant to 28 U.S.C. § 1295(a)(6). Section 1295(a)(6) provides that this Court has the authority to review "final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930." Congress specifically limited this Court's review under section 1295(a)(6) to only final determinations based on subsection (d), (e), (f), or (g) of section 337. 19 U.S.C. § 1337(c). As Realtek acknowledges, the Commission's decision it appeals is based on subsection (h), which relates to sanctions. Appellant's Brief ("App.Br.") at 2.

This Court has long held that its jurisdiction extends only to hearing appeals from final determinations *on the merits*, *i.e.*, those involving the exclusion or refusal to exclude articles. *E.g.*, *Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 963 (Fed. Cir. 2019); *Crucible Materials Corp. v. Int'l Trade Comm'n*, 127 F.3d 1057, 1060 (Fed. Cir. 1997) ("A final determination is 'a final administrative decision on the merits, excluding or refusing to exclude articles from entry' under 19 U.S.C. § 1337(d), (e), (f), or (g)."); *Viscofan, S.A. v. Int'l Trade Comm'n*, 787 F.2d 544, 552 (Fed. Cir. 1986); *Block v. U.S. Int'l Trade Comm'n*, 777 F.2d 1568, 1571 (Fed. Cir. 1985). A determination that does not "in any way affect the validity of [an] exclusion order" or lack thereof does not qualify as a final determination on the merits. *Viscofan*, 787 F.2d at 552 (this Court noting that while it has no "view on what court, if any, would have jurisdiction to review the Commission's refusal to declassify[,]" it held that "under our narrow jurisdiction to review Commission determinations, we do not have that authority"). Because the investigation was terminated due to withdrawal of the complaint without a final determination on the merits, and because the determination Realtek appeals relates to the imposition of sanctions, jurisdiction cannot originate from the determination on which Realtek appeals. As such, this Court has no jurisdiction to review Realtek's appeal.

## COUNTER STATEMENT OF THE ISSUES

1. Whether this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295(a)(6) and 19 U.S.C. § 1337.
2. Whether the United States International Trade Commission correctly determined not to review Realtek's petition for rehearing of the ALJ's decision to deny Realtek's motion for sanctions.

## INTRODUCTION

Realtek's appeal presents its third attempt to attack DivX and its outside counsel, asserting the same baseless legal and factual allegations that were previously rejected by the United States International Trade Commission ("ITC" or "Commission") and by the Administrative Law Judge ("ALJ"). Realtek's appeal identifies no basis to overturn the Commission's ruling. By filing this appeal, Realtek continues to waste the resources of the Commission, and of this Court.

## COUNTER STATEMENT OF THE CASE

Realtek provides an expansive discussion of purported facts that it alleges underlies DivX's improper and sanctionable behavior, but makes no argument based on those facts that DivX should be sanctioned. App.Br. at 5-20. Instead, Realtek's arguments focus on whether the Commission acted arbitrarily and capriciously in violation of the APA. Nonetheless, DivX provides the following factual background to correct Realtek's misrepresentations regarding the parties' conduct during the underlying investigation.

## I. PROCEDURAL HISTORY

This appeal stems from a determination of the Commission not to review ALJ McNamara's Order No. 75 declining to impose sanctions against DivX. The Commission instituted the underlying section 337 investigation on October 14, 2020 based on DivX's complaint, which alleged that Realtek, among other respondents, violated section 337 through the importation and sale of certain video processing devices, components thereof, and digital smart televisions containing the same, which infringed U.S. Patent Nos. 8,832,297 (the "'297 patent"); 10,412,141 (the "' 141 patent"); 10,484,749; and 10,212,486 (the "'486 patent").

Realtek moved for summary determination of non-infringement of the '486 patent on May 7, 2021, five months prior to its sanctions motion in October 2021. Appx2610-2638. Specifically, Realtek's motion for summary determination of non-infringement was based on the "deciphering" limitation, and what Realtek argued was DivX's untimely [redacted]" theory. Appx2623-2630. Realtek asserts that DivX did not disclose the "[redacted]" theory until after the ALJ's *Markman* order was released on March 12, 2021. App.Br. at 11; Appx2338. According to Realtek, DivX "abandoned its old [redacted] theory in favor of the new [redacted] theory because of the ALJ's *Markman* order." App.Br. at 11. This assertion is at the heart of Realtek's motion for sanctions (filed five months later), its petition to the Commission for review, and its appeal to this Court.

In its summary determination opposition brief, DivX responded by pointing to its February 8, 2021 contentions: "*DivX identified its* [redacted] *theory, which includes* [redacted] *as one of two steps*, in its contention charts for each of the Respondents...DivX's infringement contentions have always included Respondents' implementation of the [redacted] and the encompassed [redacted] process… [redacted] has been encompassed by DivX's infringement contentions since DivX provided them to Respondents on February 8, 2021." *Id.*; Appx2645 (emphasis added); Appx2650.

On appeal, Realtek points out that the ALJ described DivX's "[redacted] as a "material change" from the allegedly prior [redacted]" theory. App.Br. at 10 (citing Appx2031). Realtek further identifies the ALJ's granting of respondents' joint motion *in limine* no. 2 as support that DivX untimely relied on this "[redacted]" theory. *Id.* However, Realtek neglects to mention that the ALJ denied Realtek's motion for summary determination during the pre-hearing conference on July 1, 2022. Appx2676 at 26:14-17. After lengthy oral argument during that pre-hearing conference, where the parties discussed the level of detail of DivX's initial infringement contentions of February 8th as compared to Dr. Reinman's expert report of April 8th, the ALJ found that "[c]learly there is *a dispute of material fact* with respect to the meaning of some of the terminology that was used, the characterization and even the scope of the February 8th contentions." *Id.* at 26:8-24

(emphasis added). The ALJ also made it clear that DivX would be allowed to proceed in the evidentiary hearing with the contentions it advanced on February 8, 2021, which included the "[redacted]" theory within the [redacted], a theory under which the ALJ said "*[t]here may be*" infringement. Appx2679-2681 at 31:24-32:8 (emphasis added); *see also* Appx2678 at 28:22-23 ("The '486 patent is still in [the investigation]."). Regarding her ruling on the motion in limine no. 2, the ALJ further stated "What I'm saying is DivX has an opportunity to put in its [redacted] theory. . . . [T]here are probably *a welter of facts and some disputed expert opinions about what that* [redacted] *theory is or isn't*. . . ." Appx2679-2680 at 30:23-31:3 (emphasis added).

During a subsequent call with Realtek's outside counsel two days later on July 3, 2021, DivX's counsel and Realtek's counsel discussed Realtek's termination from the ITC investigation. Appx2494. During this call, Realtek's lead counsel stated that he told his client Realtek that he thought that Realtek's earlier threat of sanctions related to the [redacted]" theory was "*weak*" in view of the ALJ's denial of Realtek's motion for summary determination of non-infringement. Appx2494 (emphasis added).

On June 30, 2021, DivX moved to stay the investigation in view of settlement agreements with some of the respondents. Appx4210 at EDIS Doc ID 75741. Four days later, DivX also filed an urgent motion to terminate the investigation against

Realtek based on withdrawal of the complaint against Realtek. Appx2411 at EDIS Doc ID 746060. Realtek did not oppose the motion terminating its involvement in the investigation. App.Br. at 6 n.1. The parties were notified on July 6, 2021 that the ALJ would grant DivX's unopposed motion to terminate Realtek (later memorialized in Order No. 67 (July 16, 2021)). Appx4270-4271 at 9:17-10:11 (ALJ stating that she was "willing to terminate Realtek from the proceedings" and that she "d[idn't] expect Realtek to appear for the evidentiary hearing"); Appx4229-4232; Appx4233-4236. On July 6, 2021, Realtek's counsel, K&L Gates, entered an appearance on behalf of TCL, the only respondents remaining in the investigation. Appx4211 at EDIS Doc ID No. 746100. The evidentiary hearing proceeded between July 7 and July 15, 2021 as to certain claims of the '297 patent and the '486 patent against TCL.

On October 4, 2021, almost three months after Realtek was terminated from the investigation, Realtek moved for sanctions against DivX and its counsel, as discussed further below, alleging improper conduct that occurred throughout the discovery process and improper testimony that occurred during the evidentiary hearing with respect to "deciphering" limitation of the '486 patent. Appx2022-2060. Realtek filed its sanctions motion in blatant violation of the safe harbor provision required by Commission Rule 210.4(d)(1)(i), which provides that a party "*shall not* be filed . . . unless, within seven days after service of the motion . . . , the challenged

paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." (Emphasis added). Specifically, Realtek filed the motion without any notice to DivX's counsel, without any meet-and-confer, and without any advance service copy which would have commenced the seven-day safe harbor period. Appx2233.

Six months later after, DivX and TCL jointly moved, on April 19, 2022, to withdraw the complaint, and to terminate the investigation in its entirety in view of a settlement and license agreement. Appx4223. The ALJ issued an initial determination granting the joint motion on April 22, 2022, and on the same day, issued Order No. 75 denying Realtek's motion for sanctions. Appx2231. The ALJ based her denial on at least two reasons: (i) Realtek's dilatory timing of its sanctions motions; and (ii) failure to comply with the "safe harbor" provisions required by Commission Rule 210.4(d)(1)(i). Appx2233. The ALJ also discussed Realtek's allegations of DivX's improper conduct and remarked on the "discovery difficulties and delays" that occurred during the investigation. Appx2231-2232.

The Commission approved the ALJ's initial determination terminating the investigation in its entirety on May 24, 2022, without deciding the merits on whether there was a violation or whether a remedial order should be issued. Appx4223 at EDIS Doc ID No. 774106. Realtek petitioned the Commission for review of Order No. 75 on June 1, 2022, asking the Commission to either enter an order to show

cause under Commission Rule 210.24(d)(1)(ii) or to order sanctions under Commission Rule 210.24(d)(1)(i) or (ii), or to remand to the ALJ to determine whether to impose sanctions or issue an order to show cause. Appx2330. Realtek also asked that should sanctions be warranted, the funds be "paid into a Commission fund that the Commission can use to educate and deter future misconduct." Appx2336. On August 24, 2022, the Commission adopted the ALJ's Order No. 75 denying Realtek's motion for sanctions, without further amendment or comment. Appx4163-4165.

On October 21, 2022, Realtek filed this appeal seeking review of the Commission's August 24, 2022 determination not to review Order No. 75 denying Realtek's motion for sanctions. App.Br. at 3. Realtek did not seek review of the Commission's determination to terminate the investigation based on the withdrawal of the complaint and settlement. *Id.*

## II. REALTEK'S OBSTRUCTIONIST BEHAVIOR DURING DISCOVERY

From the start of the underlying investigation, Realtek refused to participate in discovery, alleging that it "c[ould] not reasonably or meaningfully respond [to interrogatories and requests for production] until DivX identifie[d] a theory of infringement that allow[ed] Realtek to identify the functionality accused and therefore the actual products accused." *See, e.g.,* Appx2581.

The ALJ ordered Realtek to confirm it would withdraw those objections: "I appreciate, Mr. Angelis, that Realtek thought that it needed -- or it could wait until the January 15 deadline for [infringement] contentions. Realtek cannot. You must respond to the requests for production of documents and/or interrogatories that were promulgated." Appx2585-2586 at 71:20-72:1. Having been ordered to participate in discovery, Realtek turned to providing piecemeal, incomplete, productions documents and source code that were insufficient to describe the relevant operation of the accused products, forcing DivX yet again to seek the ALJ's assistance on multiple occasions to obtain the necessary discovery. *See* Appx2445 (citing Appx2589-2591 at 150:3-18, 151:3-11, 204:1-11; Appx2517 at 784:13-18).

Realtek's initial refusal to participate in discovery at all and its later tactic of providing discovery only in dribs and drabs ultimately delayed DivX's receipt of information that DivX would be able to use in explicating its initial contentions. *See id*. Because respondents (including Realtek) were unwilling to agree to a deadline in the schedule for substantial completion of technical discovery, the parties agreed to a procedural schedule which allowed the parties to "seasonably supplement initial responses according to the rules." Appx4249. The ALJ granted the parties' joint schedule on January 26, 2021. Appx4257-4258; Appx4216. Despite the agreement to seasonably supplement, discovery deficiencies on the part of all respondents were continually raised before the ALJ. *See* Appx2589-2591 at 150:3-18, 151:3-11,

204:1-11; Appx2517 at 784:13-18 ("I'm very aware, given all the management conferences that were held, about the discovery problems that existed in this case and about subpoenas that were issued, a great many, and that took a great deal of time to sort out and for information to come in.").

Throughout discovery, DivX endeavored to work with Realtek on stipulating representativeness of certain products, which would have lessened the discovery burden on Realtek. Nonetheless, even as late as June 2, 2021, Realtek refused to stipulate as to representativeness of its products used in [redacted] [redacted] and [redacted] [redacted], asserting that they could not be treated the same for the purposes of the investigation. Appx2947. As explained further herein, Realtek's assertion here undermines its argument that because certain assembly code was made available by February 8th for some Realtek products used in [redacted], DivX and Dr. Reinman should have been aware that that [redacted] code would be used in Realtek products incorporated into [redacted] [redacted] with different [redacted].

Relevant to this appeal, the discovery deficiencies by Realtek included: (i) assembly code from a third-party (albeit produced by Realtek) on the Realtek products; and (ii) intermediate connective [redacted] source code (from a different third-party) that connected higher level application source code to the aforementioned third-party assembly code on the Realtek products. This critical assembly code, which is the basis of the "[redacted] theory that Realtek alleges

misconduct towards, and the intermediate connective [redacted] source code, which was required to determine what code implemented "[redacted] on the relevant Realtek products, still had not been produced at the time of the deadline for DivX's initial contentions.

On the March 2, 2021 discovery teleconference with the ALJ, Realtek's counsel admitted that, despite receiving DivX's discovery requests in October 2020, Realtek had "withheld" the production of third party source code in advance of the deposition of Realtek's technical 30(b)(6) witnesses that concluded on January 22, 2021—just two weeks before the February 8, 2021 initial contention deadline.

> [Realtek Counsel] MR. ANGELIS: . . . [O]ur technical source code depositions concluded on January 22nd. . . . *Since then, of course, we had third-party code produced because that code had been withheld*. . . . And DivX asked for the deposition of Realtek regarding that code produced after January 22nd.
> That's a real hardship for Realtek for several reasons which I will get to in a minute[.]

Appx2594-2595 at 80:23-81:11 (emphasis added). That source code that Realtek withheld, and for which Realtek refused to produce a witness to describe its operation within Realtek's products, included the aforementioned third-party assembly code. Just a week prior to the February 8th initial contentions, when discussing that third-party's position on a proposed protective order addendum, DivX explained to the ALJ that that third-party's outstanding assembly code was relevant to infringement. Appx2598-2599 at 15:1-16:1.

DivX then timely served its initial infringement contentions on respondents (including Realtek) on February 8, 2021—less than a month before the March 5, 2021 close of fact discovery—based upon the respondents' and third-parties' deficient document and source code production at the time of the initial contentions. *See*, *e.g.*, Appx2509-2512 (excerpt of infringement contentions served on Feb. 8, 2012). Despite all of respondents' discovery delays and deficiencies, DivX's February 8, 2021 contentions properly disclosed its infringement theory for the "deciphering" claim limitation, including the "[redacted]" theory, which was a part of the "[redacted]" theory, to all respondents, including Realtek. *See* Appx2525 at 923:17-21 (DivX's expert, Dr. Reinman, explained at the evidentiary hearing: "[In my mind, the contentions put the other side on notice as to the source code or material that would be covered out of this massive amount of possible source code that was produced in this case, even though some wasn't produced."). Thus, Realtek's assertion that the [redacted] step was not part of DivX's infringement theory until April 8, 2021 (App.Br. at 11) is plainly wrong.

To further explain, DivX's initial February 8th contentions disclosed the [redacted] process implemented by RTL source code (as opposed to the third-party assembly code), which DivX understood to be implemented in Realtek products based on 30(b)(6) deposition testimony. *See* Appx2686 (depicting [redacted] process using RTL source code); Appx1753 at 776:20-777:13 (indicating the RTL

diagram was disclosed in the February 8th contentions); Appx2503-2507 at 168:2-6, 177:13-18, 178:11-14, 186:7-11, 186:22-187:2 (all testifying that [redacted] the RTL source code, is compiled into the Realtek products used in the accused TVs at issue). The [redacted] process consists of two steps, one of which is [redacted] (the RTL source code denoting this step is the pink box that is circled in red, named [redacted]). Appx2686 (The diagram also depicts RTL source code denoting the second step, which is the yellow box that is pointed to by the yellow arrow.); Appx1753-1757 at 776:20-789:23.

The output of the [redacted] process is the [redacted], which is what Realtek contends is DivX's "original" infringement theory. App.Br. at 10-11 (discussing Appx1499). But what DivX accused of infringing was not merely the [redacted] output of the [redacted], as Realtek implies at App.Br. 10-11, but the components of the [redacted] process, including the "[redacted] step. DivX made this disclosure—with as much detail as possible at the time (including the "[redacted]" or [redacted] out feature, denoted with a blue arrow in Appx2686)—despite being deprived of the assembly code that actually implemented [redacted] (and [redacted] in the Realtek products. Appx2686*; see also* Appx2525-2527 at 923:23-929:7.

Despite the initial infringement contention deadline of February 8, 2021, it was not until *March 1, 2021*, that DivX's infringement expert, Dr. Reinman, was able to access and review the assembly code and intermediate connective [redacted] source code from Realtek, which Dr. Reinman needed to have a complete picture for his infringement analysis. Appx2525-2527 at 923:23-929:7; *see* Appx2601-2608 (Email of Mar. 1, 2021 and prior emails from Feb. 2021 requesting a third-party [redacted] implementation code). Once Dr. Reinman was finally able to review each of these key portions of source code for these products—including his ability to see for the first time that it was the third-party assembly code (*not* the RTL source code, *i.e.*, [redacted] that performed the [redacted] in those products—DivX seasonably supplemented its contentions with respect to these products on March 15, 2021, almost four weeks prior to when initial expert reports were due on April 8, 2021. *E.g.*, Appx2529-2535 (excerpt of contentions served on March 15, 2021); *see also* Appx1762-1763 at 785:6-786:19 (explaining that the intermediate connective [redacted] code, made available on March 1, 2021, enabled Dr. Reinman to trace completely from top level code down to the assembly code).

## III. REALTEK UNREASONABLY DELAYED FILING ITS SANCTIONS MOTION UNTIL MONTHS AFTER IT LEARNED OF DIVX'S ALLEGED SANCTIONABLE BEHAVIOR

As Realtek confessed in its sanctions motion, it first believed that "DivX's claims for infringement had no basis in factor [sic] or law" on "October 30, 2020."

Appx2025. Realtek then proceeded to send DivX "a detailed and forceful letter [on November 17, 2020] notifying DivX that its 'complaint rests upon false statements and lacks the evidentiary support that Commission Rule 210.4(c) requires.'" Appx2025-2027. Yet, despite these threats, Realtek did not file a sanctions motion.

On February 23, 2021, DivX notified Realtek that it intended to dismiss the claims of the '297 and '141 patents against Realtek. Realtek responded that it would not oppose termination of the claims, but reserved the right to request relief under Commission Rules 210.4 and 210.25 for sanctions. Appx2027. But Realtek did not pursue sanctions at this juncture either.

On March 7, 2021, Realtek served a Rule 11 sanctions motion against DivX in the co-pending district court action alleging sanctionable behavior with respect to the '486 patent. Appx2028. Realtek ultimately did not file its motion because the co-pending litigation was stayed pending resolution of the underlying ITC investigation. *See id.* While Realtek speculated that DivX filed a motion to stay the entire case due to its Rule 11 sanctions motion (Appx2028), in fact, the judge had inquired three days prior to the service of Realtek's Rule 11 sanctions motion whether the entire case should be stayed. *See DivX, LLC v. LG Electronics Inc. et al.*, Dkt. No. 28 (D. Del. Mar. 4, 2021) ("Plaintiff and Realtek shall file a joint status letter setting forth their position(s) regarding whether . . . the entire case should be stayed . . . ."). Despite having drafted and served a Rule 11 sanctions motions for the

co-pending district court action, Realtek again chose not to file for sanctions in this ITC investigation.

According to Realtek, DivX's sanctionable behavior with respect to the allegedly untimely "[redacted] theory was not revealed until the July 7, 2021 evidentiary hearing. Appx2335-2337. Yet Realtek also admits that it believed DivX "moved to its new [[redacted]] theory and contended that it had always been pursuing the [redacted] theory" on *April 8, 2021*. App.Br. at 11. This was, as Realtek admits, "two days after DivX received Respondents' April 6, 2021 notice that they would be pursuing sanctions against DivX if it pursued its [redacted] theory." *Id.* Despite believing DivX's reliance on the [redacted]" theory was sanctionable as of at least April 8, 2021, Realtek still did not pursue sanctions, instead opting to file a motion *in limine* collectively with the other respondents. *Id.* at 12.

## IV. REALTEK'S APPEAL MISCHARACTERIZES TESTIMONY FROM DR. REINMAN DURING THE EVIDENTIARY HEARING

Realtek claims that testimony at the evidentiary hearing revealed that DivX's reliance on Realtek's discovery delays as the basis for its alleged non-disclosure was baseless. First, Realtek asserts that assembly code (and in particular, the "[redacted] file) was made available earlier than March 1st. App.Br. at 16 (citing Appx1840-1845, Appx1847, Appx1704-1710). However, as DivX's expert witness, Dr. Glenn Reinman testified, at the time of the initial infringement contentions on

February 8, he believed, based upon the first deposition of Realtek's 30(b)(6) witness, that the [redacted] process in Realtek's products was implemented by a different type of source code—RTL—and not the assembly code from the third-party (which includes the aforementioned [redacted] file):

> I knew from technical documentation and my understanding of how [the [redacted]] would work in these products that [redacted] of some form would be utilized. The only source code that I had in my possession from Realtek for this purpose was that particular RTL module. And so with the understanding from the deposition [of Realtek witness Mr. Yang on January 22nd] . . . that it was implemented in some way, . . . it was my understanding that would be used or likely used for [redacted]

Appx2516 at 779:10-19.

Second, Realtek makes baseless accusations that Dr. Reinman made false representations about the [redacted] theory during the evidentiary hearing. For example, Realtek attempts to impeach the credibility of Dr. Reinman for the source code files he reviewed for *another respondent* [redacted]). App.Br. at 17-18. However, Dr. Reinman testified that, at that time, he did not understand that the source code for [redacted] products (which did include the third-party assembly code) would be the same assembly code used for the relevant Realtek products because intermediate connective source code (the [redacted]" referenced below) was missing for those Realtek products and was not made available for his review until March 1st:

> Well, I reviewed a file produced for a different processor family, *but I …didn't know at the time that it was actually used, because the* [redacted] *was missing*... it wouldn't have been the same [redacted], because what I

> was looking at was a [different [redacted] that needed to make use for [that [redacted]] itself. And so I wasn't sure something was being used in the same way as the product -- I think it may have been [redacted],*...if it was* [redacted] *I had no way of knowing that it was being used in the same way as for an [the other* [redacted] *... Just because something is used by one company -- and I had a full source code chain there -- I don't think that that means that I should have necessarily made an assumption that it was used by the [other Realtek products]. I think that code should have been produced without the* [redacted]*. I was waiting and waiting for that* [redacted] *code, sir. . . . It was not made available until March 1st.*

Appx2522 at 870:8-872:25; *see also* Appx2523 at 903:7-904:14; Appx2524 at 914:4-915:21; Appx2525 at 921:3-8 (emphasis added).

On a similar note, Realtek also takes issue with Dr. Reinman's reliance on assembly code produced for [redacted] as a basis to conclude that certain [redacted] that incorporated Realtek products[1] (which also had incomplete discovery) infringed. App.Br. at 18. As Dr. Reinman further explained, upon receiving the intermediate connective source code (the "[redacted]" discussed above), he was able to conclude that assembly code, and not RTL, was used for [redacted] with a non-[redacted]

[1] In the underlying investigation, third party [redacted] also failed to timely produce discovery, including intermediate connective source (*i.e.*, the [redacted] code). Appx2457 at n.1. As Dr. Reinman testified during the evidentiary hearing, he made reasonable assumptions that [redacted] with [redacted] which incorporated Realtek products would also use the same source code based on his review of: (i) the Realtek RTL for those [redacted]; (ii) the assembly code (once made available for other Realtek products; and (iii) the assembly code for [redacted] that incorporated Realtek products. *Id.* (citing Appx2518 at 838:23-839:24, Appx2519 at 841:14-844:1, Appx2520 at 850:16-852:8, Appx2521 at 862:24-864:22, Appx2522 at 870:12-871:20, Appx2523 at 903:13-904:1).

[redacted] Appx2475 (citing Appx2525 at 921:21-922:9). Then, upon comparing the assembly code produced for [redacted] [redacted] and the [redacted] [redacted] with a non-[redacted] [redacted] he determined that the assembly code between these two different Realtek product categories were "[redacted] by [redacted]" the [redacted] *Id.* This gave Dr. Reinman "confidence" that those [redacted] [redacted] *with* a [redacted] [redacted] "would still use that same assembly code for Realtek's implementation at least" even though the assembly code still had not be provided at the time of the hearing. *Id.*; Appx2519 at 841:17-842:11.

Realtek also claims that Dr. Reinman admitted he did not investigate the details of *another respondent's* (MediaTek) [redacted] implementation until after the February 8th initial contentions. App.Br. at 15. This is a misrepresentation of Dr. Reinman's testimony, and furthermore, not relevant because it does not pertain to Realtek. Dr. Reinman actually testified that he "may have made the request" for certain source code, but that he "d[id]n't recall." Appx1858 at 881:6-14. During Dr. Reinman's testimony at the evidentiary hearing, Realtek's counsel persistently questioned Dr. Reinman with similar inappropriate questions, requiring the ALJ to interject and warn Realtek's counsel that his questioning was getting into work-product and privileged communications. Appx1858-1860.

Realtek alleges a third deception, namely that the RTL source code Dr. Reinman believed was used in Realtek products at the time of the February 8th initial

contentions also implements [redacted]," and thus should have been cited therein. App.Br. at 18-19. However, as explained above, the RTL source code for the "[redacted]," a file named [redacted] *was* cited in DivX's February 8th initial contentions. *See* Section III.B, *supra*.

## SUMMARY OF THE ARGUMENT

Realtek, represented by its counsel K&L Gates, has shown a repeated pattern of levying sanctions allegations against its opponents at the International Trade Commission and in other courts. The sanctions motion at issue was not the first time Realtek accused DivX of sanctionable conduct – Realtek's accusations in the underlying investigation started at the outset, alleging a lack of an adequate pre-filing investigation. Similarly, in another contemporaneous appeal before this Court, Realtek, represented by the same K&L Gates counsel, appealed a failed motion for sanctions *also* alleging (in part) lack of adequate pre-filing investigation. *Realtek Semiconductor Corporation v. Int'l Trade Comm'n*, No. 23-1187. In the order underlying that appeal, the ALJ found Realtek's allegations regarding a defective complaint were "not substantiated." *Certain Integrated Circuit Products and Devices Containing the Same*, Inv. No. 337-TA-1295, Order No. 11 (Apr. 12, 2022).

Realtek's appeal here should be denied for three reasons. First, this Court does not have jurisdiction to hear the appeal. Congress afforded this Court authority to review decisions from the Commission that are final determinations regarding unfair

practices in import trade and remedial orders upon a merits determination in the investigation. Congress explicitly did not provide this Court authority to review determinations relating to the denial of monetary sanctions. Furthermore, this Court has consistently held, over the past few decades, that it does not have jurisdiction to hear cases which are not appealing a final determination on the merits. Thus, exercising jurisdiction over this appeal would be in contravention to not only Congress's intent, but also this Court's own jurisprudence.

Second, the Commission did not act arbitrarily or capriciously in declining to review Realtek's petition, and in adopting the order of the ALJ to deny Realtek's sanctions motion. Nor did the Commission commit plain error or act in a manner inconsistent with its own rules. The Commission stated that it considered Order No. 75, the parties' submissions, and the evidence of record prior to deciding not to review the ALJ's order. The ALJ carefully considered (and summarized) the merits of Realtek's motion, and found there was no basis for sanctions. Her decision was based not only based on the lack of safe harbor compliance, but also on Realtek's problematic, dilatory discovery tactics and efforts in bringing the motion, which undermined the credibility of those allegations. Furthermore, not only did Realtek lack standing to pursue Commission review, the monetary sanctions it requested are also expressly forbidden by Commission rule.

Third, Realtek has failed to identify any sanctionable conduct with respect to DivX's infringement contentions or hearing testimony. While Realtek asserts that DivX changed its infringement theory two months after the initial infringement contentions were served, the record shows this was not true. Notably, Realtek obstructed discovery throughout the investigation, preventing DivX from accessing material crucial to DivX's contentions and infringement theory. Additionally, Realtek moved for summary determination of non-infringement, alleging that the '486 Patent's "deciphering" element could not be met based upon what it argued as DivX's "untimely" infringement theory, which the ALJ denied. After the motion was denied, Realtek's lead counsel represented to DivX's counsel that he informed his client Realtek that its position with respect to sanctions regarding infringement allegations on the '486 patent was "weak." DivX terminated Realtek from the investigation prior to the evidentiary hearing. Yet three months later after Realtek was terminated, it filed the sanctions motion that is the basis of this appeal, ostensibly based on testimony that occurred during the evidentiary hearing that *it did not even attend*.

Therefore, for any of these above reasons, Realtek's appeal should be denied.

## STANDARD OF REVIEW

Putting aside the fact that this Court does not have jurisdiction to review the Commission's decision, the Commission's determinations on matters related to

sanctions are generally reviewed under the standards of the APA, 5 U.S.C. § 706. 19 U.S.C. § 1337(c). This standard requires agency actions or conclusions are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *PS Chez Sidney, L.L.C. v. Int'l Trade Comm'n*, 684 F.3d 1374, 1379 (Fed. Cir. 2012) (quoting 5 U.S.C. § 706).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). "[U]nder this standard, a reviewing court may not set aside an agency rule that is rational, based on consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute." *Id.* "Courts have found an agency's decision to be arbitrary and capricious when the agency entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (internal quotations omitted). "The arbitrary and capricious standard applicable here is *highly deferential*" and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts,*

*Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)) (emphasis added).

Additionally, the Commission has broad authority to interpret and enforce its own rules related to discovery and sanctions procedures. "It is well settled that an agency's interpretation of its own regulations is entitled to broad deference from the courts." *Cathedral Candle Co. v. Int'l Trade Comm'n*, 400 F.3d 1352, 1363 (Fed. Cir. 2005) (citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)). "Deference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own." *Id*. "[A]s the Supreme Court has explained, the agency's construction of its own regulations is of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (internal quotations removed). "That generous degree of deference is due to an agency interpretation of its own regulations even when that interpretation is offered in the very litigation in which the argument in favor of deference is made." *Id.* (citing *Auer v. Robbins*, 519 U.S. 452, 461-62 (1997)).

## ARGUMENT

### I. THE COMMISSION'S DETERMINATION NOT TO REVIEW A DENIAL OF SANCTIONS IS NOT A FINAL DETERMINATION THAT IS APPEALABLE TO THIS COURT

This Court has the authority to review "final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930." 28 U.S.C. § 1295(a)(6); *Viscofan*, 787 F.2d at 552. Section 337 provides similarly, stating that only persons "adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) may appeal such determination . . . to the United States Court of Appeals for the Federal Circuit for review in accordance with chapter 7 of title 5." 19 U.S.C. § 1337(c). Subsection (d) through (g) of section 337 relate to permanent exclusion orders, temporary relief orders, cease and desist orders, and orders granting relief when a respondent defaults. *Seagate Tech. v. U.S. Int'l Trade Comm'n*, 36 F.3d 1113 (Fed. Cir. 1994). In contrast, the Commission's ability to prescribe sanctions originates not from subsections (d) through (g), but from subsection (h), which Realtek acknowledges. App.Br. at 2 (asserting the Commission opinion is a "final determination under 19 U.S.C. § 1337(h)"). Thus, the plain language of the both section 1295 and section 337 does not allow this Court to review Commission determinations upholding the denial of a sanctions motion.

Additionally, the Commission's determination not to review the denial of the sanctions motion is not a final determination. "A final determination is a final administrative decision *on the merits*, excluding or refusing to exclude articles from entry." *Block*, 777 F.2d at 1571 (emphasis in original; internal quotations omitted). It is a longstanding principle that a decision is not final "unless it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198, 204 (1999); *see also Crucible Materials Corp. v. U.S. Int'l Trade Comm'n*, 127 F.3d 1057, 1060 (Fed. Cir. 1997) ("A final determination is 'a final administrative decision on the merits, excluding or refusing to exclude articles from entry' under 19 U.S.C. § 1337(d), (e), (f), or (g)."). The Commission's denial of Realtek's petition to review did not end the litigation on the merits, as the determination "did not involve consideration of the factual requirements necessary to prevail on the merits." *Seagate Tech.*, 36 F.3d at *3 (non-precedential). Nor was there any final determination pursuant to subsections (d) through (g) in the investigation because it had already ended due to termination by the parties on the basis of settlement. Appx4223; *Block*, 777 F.2d at 1571 (the Commission's decision to let stand the ALJ's decision to grant the joint motion to terminate the investigation was not a "decision on the merits and, thus, no[t a] final determination").

While this Court has held that certain non-final determinations are appealable because they are intrinsically a final determination, *Amarin Pharma, Inc. v. Int'l Trade Comm'n*, 923 F.3d 959, 963 (Fed. Cir. 2019) that reasoning does not apply here. *See also Amgen, Inc. v. Int'l Trade Comm'n*, 902 F.2d 1532, 1535 (Fed. Cir. 1990) (finding that the Commission's dismissal for lack of subject matter jurisdiction was appealable because the decision was intrinsically a final determination). Commission orders are intrinsically a final determination when they "have the same operative *effect*, in terms of economic impact . . . , as a final determination" under subsections (d), (e), (f), or (g). *Imp. Motors Ltd. v. U.S. Int'l Trade Comm'n*, 530 F.2d 940, 946 (C.C.P.A. 1976) (emphasis in original). For example, in *Amarin Pharma*, this Court held that the Commission's decision not to institute an investigation because the claims were precluded by the Food, Drug, and Cosmetic Act (21 U.S.C. § 301) and dismissal of the complaint was appealable under section 1295(a)(6). 923 F.3d at 963. This was because the decision "clearly reached the merits of the complaint and determinatively decided Amarin's right to proceed in a section 1337 action." *Id.* Here, the Commission's refusal to sanction or order DivX's counsel to show cause is unrelated to the exclusion or refusal to exclude articles from entry, nor does it have the same operative economic effect as a final determination under subsection (e) through (g).

Realtek asserts that Commission decisions pursuant to subsection (h) are reviewable under the Administrative Procedure Act pursuant to section 337(c). App.Br. at 2-3. While subsection (c) provides that determinations by the Commission under subsection (h) are reviewable in accordance with section 706 of title 5, the statute does not allow persons adversely affected by such determinations to appeal to the Federal Circuit. Realtek's reliance on *Viscofan, S.A. v. U.S. Int'l Trade Comm'n* is misplaced because *Viscofan* supports the lack of this Court's jurisdiction. 787 F.2d 544, 552 (Fed. Cir. 1986). The appellant in *Viscofan* challenged the Commission's affirmance of the ALJ's refusal to declassify certain evidence – this Court did not reach the merits of the issue because it decided it had "no jurisdiction to review the refusal to declassify." *Id.* at 551-52; *see also id.* at 552 (this Court noting that while it has no "view on what court, if any, would have jurisdiction to review the Commission's refusal to declassify[,]" it held that "under our narrow jurisdiction to review Commission determinations, we do not have that authority"). As this Court reasoned, "[a]n affirmance or reversal of the refusal to declassify would not and could not in any way affect the validity of the exclusion order." *Id.* at 552. The same is true here – Realtek's requested remedy, an order to show cause and the imposition of sanctions "into a Commission fund that the Commission can use to educate and deter future misconduct" (Appx2336) does not

affect any remedial orders, nor could it, because the investigation was terminated on the basis of withdrawal of the complaint and settlement.

## II. THE COMMISSION DID NOT ACT INCORRECTLY FAIL TO ADDRESS REALTEK'S REQUEST FOR RELIEF

The Commission's denial of Realtek's petition for review and adoption of the ALJ's initial determination was not a violation of the APA. Nor was it a violation of the APA for the Commission to refuse to *sua sponte* issue an order for DivX to show cause. Realtek's frivolous appeal asserts that the Commission acted arbitrarily and capriciously, but fails to identify any basis ground in truth or legal principles to overturn the Commission's decision.

As an initial matter, Realtek lacked standing to petition for review because it was not a party to the investigation at the time of the petition, or at the time it filed its sanctions motion. Although the Commission did not explicitly address this issue when it adopted the ALJ's order, it acknowledged that Realtek was a "former respondent." Appx4164. This alone dooms Realtek's appeal.

Furthermore, the Commission did not act arbitrarily and capriciously by failing to address Realtek's request for relief under 19 C.F.R. § 210.4(d)(ii). Nor was the Commission's denial of Realtek's petition plainly erroneous or inconsistent with Commission rules. The Commission, like the ALJ, did not fail to exercise discretion, but rather exercised its discretion to adopt the ALJ's order and declined to issue sanctions or a show cause order because Realtek failed to identify any sanctionable

conduct, and also because it did not follow proper procedure when filing its sanctions motion. The Commission and the ALJ did not ignore the merits of Realtek's motion.

Nor did the Commission treat this investigation differently than other investigations. There is no Commission Rule *requiring* the ALJ or the Commission to address allegedly sanctionable conduct when a motion for sanctions is unavailable, and Realtek identifies none. Per Commission Rules, the decision to issue an order to show cause *is completely discretionary*.

### A. Realtek Lacked Standing to Petition the Commission for Review

Realtek did not have standing to petition the Commission for review of Order No. 75. By the time it filed its sanctions motion, it was, by its own agreement, no longer a party in the investigation. App.Br. at 6 n.1; Appx4164. Commission Rule § 210.43(a)(1) provides that petitions for review *may only be filed* by a "party to an investigation, which the Commission defines as only the "complainant, respondent, intervenor, or the Office of Unfair Import Investigations." 19 C.F.R. § 210.3. As acknowledged by the Commission in its notice not to review the initial determination terminating the investigation, Realtek was not a party to the investigation at the time of its petition, nor at the time it filed its sanctions motion. *See* Appx4164 (referring to Realtek as a "former respondent"). Thus, not only did Realtek's alleged sanctionable behavior occur *after* DivX terminated the investigation against Realtek, Realtek was not even present at the evidentiary hearing when the alleged behavior

occurred. Therefore, the ability to petition the Commission for review provided by section 210.43(a)(1) was unavailable to Realtek.

Additionally, Realtek did not oppose DivX when DivX moved to terminate Realtek from the investigation based on withdrawal of the complaint. App.Br. at 6 n.1. Nor did Realtek petition for review of the ALJ's initial determination terminating the investigation as to Realtek. *See* Appx4224-4225. As such, Realtek did not having standing to petition the Commission for review of Order No. 75, which itself arose out of Realtek's filing of an untimely and improper motion for sanctions.

### B. The ALJ Did Assess the Merits of Realtek's Motion, Which The Commission Adopted

Although Realtek alleges that the ALJ in Order No. 75 "did not consider whether a motion for sanctions was permissible" (*see* App.Br. at 26), the ALJ expressly considered Realtek's arguments in its motion for sanctions. For example, over the course of two pages in Order No. 75, the ALJ summarized Realtek's arguments and DivX's opposition thereto. Appx2231-2232. In addition, while noting that the "merits need not be reached" in the order because of Realtek's inexcusable delay in filing the motion, given Realtek's arguments it had made throughout the investigation, and lack of compliance with the safe harbor rule, the ALJ noted that "much might be said about the discovery difficulties and delays in this case as well as the merits of each party's arguments[.]" This demonstrated that

she fully understood and considered the merits of Realtek's motion, as well as the effect of Realtek's complicity to the complained of level of disclosure in DivX's contentions, based on Realtek's own dilatory discovery tactics, prior to issuing Order No. 75. *See id.* at Appx2232.

The ALJ denied Realtek's motion on two grounds, only one of which is based on Realtek's flagrant lack of compliance with the safe harbor provision of Commission Rule 210.4(d)(1)(i). The other ground, as indicated above, was based on the problems with the dilatory timing of Realtek's motion. As explained on page 3 of the Order: (i) "*[t]here are problems with the dilatory timing* of Realtek[']s Motion," and (ii) "*as well as* with its failure to comply with 'safe harbor' provisions [of] Commission Rule 210.4(d)(1)(i)." Appx2233 (emphasis added); *see also id.* ("Just as Realtek did not file its Motion "promptly" pursuant to Commission Rule 210.25(a)(1) when it believed and claimed that DivX's process abuse began, Realtek also failed to comply with the clear requirements of notice and the safe harbor provisions of Commission Rule 210.4(d)(1)." (emphases added)).

With respect to Realtek's dilatory timing, the ALJ explained that "Realtek contends [in its motion for sanctions] that DivX's allegedly sanctionable conduct extends back to at least March 2021, if not back to October 2020, when Realtek first informed DivX that its claims of infringement against Realtek had no basis in law or fact…Yet Realtek did not file its Motion until almost one year after it claims it

first informed DivX of the frivolous nature of its complaint against Realtek, or at least seven (7) months after Realtek says it should have been dismissed from the investigation—if Realtek's later date is considered." *Id.* As explained above in Section III.C, Realtek notified DivX multiple times throughout the course of the investigation of DivX's allegedly sanctionable behavior, yet failed to file a motion until at nearly a year after its first allegation of sanctionable behavior in October of 2020. Realtek cannot erase its prior admissions, as it attempts to do in the present appeal, by claiming that DivX's purported misconduct "was not revealed until the evidentiary hearing" and that the delay in filing its sanctions motion was due solely to a health issue of one of its lead counsel's family members. App.Br. at 3, 4. As Realtek is well aware, and as the ALJ noted, 19 C.F.R. § 210.25(a)(1) requires sanctions motions to be brought "promptly"— not several months, or even a year, after discovering allegedly sanctionable conduct. Appx2233.

With respect to Realtek's flagrant violation of the safe harbor provision, the ALJ explained that "Realtek did not offer proof that it served DivX with a draft sanctions motion that contained the substance of its allegations at least seven (7) days before the October 4, 2021 filing of its Motion. Realtek's litany of concerns and admonitions about DivX's alleged abuse of process in e-mail exchanges over a number of months do not constitute the notice that Commission Rule 210.4(d)(1)(i) requires." *Id.* Realtek's violation was inexcusable because "[t]he process set forth in

that rule is relatively clear. Informal notices of concern in the form of e-mails without even a draft motion attached does not comply with a strict application of that Rule." *Id.*

Thus, based on all of those reasons (including, but not limited to, the lack of any compliance whatsoever with Commission Rule 210.4(d)(1)(i)), the Order concluded "*[f]or the foregoing reasons*, Realtek's motion for sanctions, Motion Docket no. 1222-075 is *denied*." *Id*. (emphasis added).

Realtek asserts that the Commission ignored Realtek's arguments and request for relief. But that is not the case. The Commission stated in its order not to review: "Upon consideration of Order No. 75, the parties' submissions, and the evidence of record, the Commission has determined not to review Order No. 75." Appx4165. By doing so, it adopted the ALJ's opinion. *See Caterpillar Inc. v. Int'l Trade Comm'n*, 837 F. App'x 775, 776 (Fed. Cir. 2020) ("The Commission determined not to review . . . the administrative law judge's decision . . . . Accordingly, the ALJ's decision became the Commission's decision.") (citing 5 U.S.C. § 557(b); 19 C.F.R. § 210.42(h).) (non-precedential).

### C. The Commission Did Not Treat Realtek's Petition Any Differently than Other Similar Sanctions Motions

The fact that the Commission sometimes entertains motions for sanctions under 19 C.F.R. § 210.4(d)(1)(ii) when 19 C.F.R. § 210.4(d)(1)(i) is unavailable but chose not to do so here does not mean that the Commission acted arbitrarily and

capriciously in violation of the APA. Nor was the Commission's denial of Realtek's petition plainly erroneous or inconsistent with Commission rules. *See*, *e.g.*, *Cathedral Candle Co.*, 400 F.3d at 1364.

As 19 C.F.R. § 210.4(d)(1)(ii) provides: "The administrative law judge or the Commission *may* enter an order *sua sponte* describing the specific conduct that appears to violate paragraph (c) of this section and directing an attorney, law firm, party, or proposed party to show cause why it has not violated paragraph (c) with respect thereto." (Emphasis added.) Thus, there is no requirement that the ALJ or the Commission must *always* impose an order to show cause pursuant to subsection (d)(1)(ii) when subsection (d)(1)(i) is not available. It is completely discretionary on the ALJ or the Commission's initiative.

Further to this point, the ALJ had the authority to issue an order to show cause pursuant to 19 C.F.R. § 210.4(d)(1)(ii) at any point in this investigation regardless of whether a sanctions motion had been filed. Yet the ALJ chose not to do so even when faced with Realtek's arguments repeated over and over again, including in its motion for summary determination back in May 2021, and its sanctions motion in October 2021, because DivX did not engage in any sanctionable behavior. The ALJ was plainly aware of her authority to issue show cause orders pursuant to Commission Rule 210.4(d)(1)(ii) when presented with a deficient motion for sanctions. *See Certain Blowers and Components Thereof*, Inv. No. 337-TA-1217,

Order No. 31 (Oct. 20, 2021) (same ALJ as the instant investigation denying a motion for sanctions but separately issuing an order to show cause).

While the ALJ did not expressly cite Commission Rule 210.4(d)(1)(ii) in her opinion denying sanctions, there is no need for an ALJ to expressly state that she is not exercising *sua sponte* authority—"motions" seeking *sua sponte* relief under Commission Rule 210.4(d)(1)(ii) are disfavored as procedurally defective. *See*, *e.g.*, *Certain Automotive GPS Navigation Sys., Components Thereof, and Prods. Containing the Same*, Inv. No. 337-TA-814, Order No. 8, at 3 (May 8, 2012) ("I agree with the Staff that Respondents are attempting to circumvent the Safe Harbor Rule, 19 C.F.R. § 210.4(d)(1)(i), by requesting that I *sua sponte* find a violation of a Commission Rule and sanction Beacon.").

Realtek asserts that the Commission has repeatedly relied on 19 C.F.R. § 210.4(d)(1)(ii) to address sanctionable conduct when a requesting party failed to meet the procedural requirements of 19 C.F.R. § 210.4(d)(1)(i), and provides a few examples of investigations where the Commission has done so. App.Br. at 28-29. However, Realtek presupposes that the conduct it identified is actually sanctionable (which as provided below, it is not), and also ignores the plethora of other investigations, including the other investigation Realtek is a respondent in, where ALJs have declined to issue show cause orders upon invitation by a party, or when denying sanctions motions. *E.g.*, *Certain Power Semiconductor and Mobile Devices*

*and Computers Containing Same*, Inv. No. 337-TA-1308, Order No. 29 (Nov. 22, 2022); *Certain Integrated Circuit Products and Devices Containing the Same*, Inv. No. 337-TA-1295, Order No. 11 (Apr. 12, 2022); *Certain RF Capable Integrated Circuits and Products Containing the Same*, Inv. No. 337-TA-982, Order No. 28 (Apr. 3, 2007).

For example, in *Certain RF Capable Integrated Circuits and Products Containing the Same*, a respondent did not file a motion for sanctions, but suggested to the ALJ in a post-termination filing that the ALJ should enter an order *sua sponte* for the complainant to show cause as to why it did not violate Commission Rule 210.4(c). *Certain RF Capable Integrated Circuits,* Inv. No. 337-TA-982, Order No. 28, at 4 (Apr. 3, 2007). The ALJ declined that invitation, reasoning that the respondent's filing was a request that the ALJ impose sanctions, and was not an exercise of the "*sua sponte*" provisions of Commission Rule 210.4. *Id.* ("[T]o call the imposition of sanctions, or even a show cause order, '*sua sponte*' would be inaccurate."). The ALJ also declined to impose sanctions because "[m]uch of the allegedly sanctionable conduct identified by [respondent] amounts to legal disputes where [complainant] and [respondent] hold opposing positions." *Id.* As explained above in Section III, the same is true here. During the pre-hearing conference in the underlying investigation, the ALJ stated: "[c]learly there is *a dispute of material fact* with respect to the meaning of some of the terminology that was used, the

characterization and even the scope of the February 8th contentions." Appx2928 at 26:8-24 (emphasis added).

### D. Realtek's Requested Relief—Monetary Sanctions—is Prohibited by the Commission Rules

In any event, Realtek's ultimate requested relief—whether through sanctions or an order to show cause—was the payment of funds to the Commission. However, neither the ALJ nor the Commission has authority to issue monetary sanctions without the issuance of an order to show cause *prior* to the termination of the investigation. Commission Rule 210.4(d)(2)(iii) provides that "monetary sanctions may not be imposed on the [ALJ]'s . . . initiative unless . . . the [ALJ] issues an order to show cause *before* the investigation or related proceeding is terminated . . . as to the party or proposed party to be sanctioned," and before the filing the filing of "a motion to withdraw the complaint, motion, or petition that was the basis for the investigation or related proceeding." Thus, because DivX and TCL filed the joint motion to terminate the investigation based on the withdrawal of the complaint prior to the issuance of a show cause order, Commission Rules forbade the imposition of monetary sanctions on DivX.

This situation is analogous to that of *Certain Blood Separation and Cell Preparation Devices*, where respondents sought a show cause order from the ALJ and monetary damages from complainant. Inv. No. 337-TA-1147, Order No. 16, at 3 (Dec. 20, 2019). There, the complainant filed a motion to terminate the

investigation based on a withdrawal of the complaint two days before the respondents filed their motion. *Id.* The ALJ reasoned that this reading of the Commission Rules was in accord with the 1993 revision of Fed. R. Civ. P. 11, which Commission Rule 210.4 is based on. *Id.* at 2-3. As the ALJ concluded, the purpose of Rule 11(c)(5), as described in the Advisory Committee Notes, is to limit monetary sanctions to only after a court-initiated order "only if the show cause order is issued before any voluntary dismissal or an agreement of the parties to settle the claims made by or against the litigant." *Id.* at 3 (citing Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment). The Advisory Committee explained that parties who voluntarily dismiss "should not be faced with an unexpected order from the court leading to monetary sanctions" that might have affected their willingness to voluntarily dismiss. *Id.*

DivX withdrew the complaint against Realtek prior to the evidentiary hearing, and DivX settled the investigation against the only remaining respondent TCL prior to the ALJ's Order No. 75. When DivX settled the investigation, the ALJ had not already ordered DivX to show cause. Since Rule 210.4(d)(2)(iii) prohibits a show cause order from issuing after filing of a motion to withdraw, a settlement agreement, a consent order agreement, or an arbitration agreement, no such order can be issued. Therefore, Realtek may not obtain the monetary relief that it seeks.

## III. DIVX DID NOT ENGAGE IN ANY SANCTIONABLE CONDUCT

As a final matter, Realtek has not shown, and cannot show, that DivX's allegations against Realtek for infringing DivX's '486 patent, at any point (whether during the investigation, or at the hearing), were frivolous or sanctionable. Realtek's position is belied by the ALJ's denial of Realtek's motion for summary determination of non-infringement in which Realtek alleged that the '486 Patent's "deciphering" element could not be met based upon what it argued as DivX's untimely "[redacted] theory. *See* Section III.A, *supra;* Appx2927-2935. Realtek's assertion is also belied by the ALJ's statement, after lengthy oral argument on Realtek's motion for summary determination: "[C]learly there is *a dispute of material fact* with respect to the meaning of some of the terminology that was used, the characterization and even the scope of the February 8th contentions." Appx2928 at 26:8-24 (emphasis added). Indeed, after this denial, Realtek's lead counsel informed his client that Realtek's threat of sanctions was "*weak*." Appx2494.

While Realtek alleges that DivX's infringement expert, Dr. Reinman, "had everything he needed to disclose [redacted] by January 2021[,]" (App.Br. at 19), ahead of DivX's initial infringement contentions on February 8th, Realtek omits several material facts. As Dr. Reinman testified, in order to support his infringement opinion, he needed to access and review the intermediate connective code (the "[redacted]") *and* the assembly code from Realtek in order to have a complete picture for his

infringement analysis. Appx2525-2527 at 923:23-929:7. As explained above in Sections II.B and II.D, the intermediate connective [redacted] code was missing at the time DivX's initial infringement contentions were filed. It was only after Dr. Reinman was finally able to review *both* of these key portions of source code that Dr. Reinman could finally confirm that it was the assembly code—*not* the RTL code—that implemented the "[redacted] process in these products. When Realtek finally made the assembly code and [redacted] code available and Dr. Reinman reviewed it, DivX seasonably supplemented its contentions on March 15th. *Id.*; *see also* Appx2529-2535; Appx1762-1763 at 785:6-786:19.

But as Dr. Reinman explained at the evidentiary hearing, even without the benefit of Realtek's late-produced [redacted] code, DivX's February 8th initial infringement contentions disclosed Dr. Reinman's personally created representation of the "[redacted] theory, specifically depicting the "[redacted]" step as part of the theory. Appx1753-1757 at 776:20-789:23. The products at issue in this investigation required weeks of sifting through inordinate amounts of source code to rest on the subset of files that were included by DivX in its contentions for the "deciphering" element. Despite the lack of complete technical discovery by February 8th, DivX disclosed source code for the [redacted] process in the "deciphering" claim limitation. *See* Section III.B, *supra.*

Thus, DivX's initial infringement contentions as to Realtek's exact implementation of deciphering were as detailed as the level of source code discovery available to DivX would allow at that time, and DivX timely supplemented its infringement contentions when more source code was made available. *E.g.*, Appx2529-2535. This is more than sufficient as "PICs [preliminary infringement contentions] are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process." *AntiCancer, Inc. v. Pfizer, Inc.,* 769 F.3d 1323, 1329 (Fed. Cir. 2014).

In addition, there is nothing improper about Dr. Reinman's additional explanation and explication of those contentions in his expert report. "The scope of infringement contentions and expert reports are not, however, coextensive. Infringement contentions need not disclose specific evidence nor do they require a plaintiff to prove its infringement case, whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *ROY-G-BIV Corp. v. ABB, Ltd.,* 63 F. Supp. 3d 690, 699 (E.D. Tex. 2014) (internal quotations omitted). Despite the less stringent standard for initial contentions, DivX's contentions did cite *specific* evidence.

To revisit an analogy used previously in this investigation, DivX accused a wheel of a car, comprising a tire and a rim, of infringement. In its contentions, DivX

disclosed both parts of the wheel—the tire and the rim—as what infringed. Dr. Reinman best explained this point:

> *Under Complainant's or DivX's construction, the entirety of the* [redacted] *would satisfy the claim. It also could be that one of the two pieces of the* [redacted] *could satisfy the claim. With Respondent's construction, it was a need that there could not be an external input, and, therefore, the* [redacted] *procedure alone with the* [redacted] *as the input of interest that is being deciphered would satisfy Respondent's construction. So, as a whole, the* [redacted] *contained the deciphering elements in either construction.* To be fair, Your Honor, we had -- this was a beginning process where there were other theories involved, and those theories were not symmetrical in the sense they could handle both constructions. And so *there wasn't a shifting. It was more of a sifting,* if you will, as we looked at different theories. And, Your Honor, when things don't fit we drop them out. *And so in this case this theory happened to work for both individuals involved in this litigation, both sides.*
>
> *…I pointed to the* [redacted] *as a whole, of which* [redacted] *was a part. That satisfied Respondent's construction. And so, in my mind, by pointing to the* [redacted] *and the components inside, I was pointing to that larger piece for Complainants' construction and* [redacted] *which was the piece that does the deciphering and unscrambling as far as Respondents' construction in one piece… In my mind, the contentions put the other side on notice as to the source code or material that would be covered out of this massive amount of possible source code that was produced in this case, even though some wasn't produced.* But in my mind, by putting the other side on notice for the [redacted] I was covering both possible constructions. I see it as one theory but with two possible constructions.

Appx2517 at 781:22-783:5; Appx2525 at 923:2-25 (emphasis added).

Moreover, to the extent that DivX's initial infringement contentions somehow did not disclose DivX's deciphering theory—they did—Realtek's own discovery delays and deficiencies were to blame. As explained, Dr. Reinman was unable to

review key source code until weeks after the initial contentions date. *Id.* Before that time, DivX reasonably believed that the deciphering process was enacted by RTL source code used in Realtek products. This reasonable belief was supported by the deposition testimony from Realtek's own 30(b)(6) witness Mr. Victor Yang on January 22, 2021. Appx2503 at 168:2-6; Appx2504 at 177:13-18; Appx2505 at 178:11-14; Appx2506-2507 at 186:7-11, 186:22-187:2 (all testifying that [redacted] the RTL source code, is compiled into the Realtek products used in the accused TVs at issue). Mr. Yang's responses to those questions led DivX to believe that the RTL source code files—and not the third-party assembly code files that DivX disclosed in later supplemental contentions—were being used to implement the [redacted] process (and thus the "[redacted]" process as well) in the accused Realtek products.

Thus, on February 8, 2021, DivX served its initial infringement contentions including those specific RTL file names in its contentions, and diagrams depicting the instantiation and use of those files in support of the "[redacted] process theory (which includes the "[redacted] process). Weeks later, on March 1st, Realtek code relating to the [redacted] and the assembly code was finally made available for remote review, and DivX learned for the first time that the RTL files were *not* in fact used with the Realtek products, and that *other* assembly code was used to implement the [redacted] process. *See* Section III.B, *supra*.

After receiving the intermediate connective [redacted] source code from Realtek on March 1, 2021, and having an earnest opportunity to review it and connect it to the third-party assembly code, DivX supplemented its contentions for on March 15, 2021 by *inter alia,* "includ[ing] a file named [redacted], which is [third-party] assembly code." Appx1762-1763 at 785:6-786:19. As Dr. Reinman explained:

> [This third-party assembly code is] the implementation of [redacted] that is actually utilized by the [redacted] Realtek flow that I mentioned. Once I had the [redacted] in my possession, and I could trace completely from the [higher level] source code through the [mid-level source code] framework all the way down to Realtek, this is the [third-party] assembly code, which, Your Honor, is software. And this software executes on an [third-party] CPU that is found on the Realtek [product]. And this [third-party] assembly code performs the [redacted] as I mentioned. There's a [redacted] coming in. It makes use of what are called [certain] extensions to the [third-party] processor. These are specialized instructions . . . are implemented on the [third party] processor itself, but are specified by this assembly code in terms of the operation that they are going to perform.

*Id.*

All of these supplemental contentions incorporated the later produced third-party assembly code, and *all occurred before the close of fact discovery*. Further, any doubt that DivX was pursuing [redacted] as a viable theory for "deciphering" was erased by *April 1, 2021*, when DivX deposed Realtek's 30(b)(6) witness Mr. Yang yet again. During that deposition, DivX elicited even further testimony about the functionality of the accused products, including the relevant assembly code file which implemented the [redacted] step in the Realtek

products. Appx2686. As allowed by the Procedural Schedule, DivX "seasonably supplement[ed] initial responses according to the rules." Appx4237 at Appx4249; Appx4257-4258. In other words, as critical information was made available, DivX timely supplemented its contentions, as required by the rules. *See* 19 C.F.R. § 210.27(f)(1). The additional or corrective information that DivX incorporated into its supplemental information—namely the [redacted] produced on March 1—was produced after initial contentions were served.

On April 8, 2021, Dr. Reinman further explained the same "[redacted]" theory in his initial report. And on May 4, 2021, at his deposition, Dr. Reinman was asked specifically about the exemplary Realtek RTL (*e.g.*, [redacted] underlying this theory, and the actual assembly code files for [redacted] ([redacted]). Appx2691-2693 at 408:12-410:5. Pursuant to the ALJ's Ground Rule 9.5.6, "Expert witness testimony at the hearing shall be confined to the scope of the expert's report(s), and deposition testimony." Respondents (including Realtek) questioned Dr. Reinman at length about the source code in Realtek products for performing [redacted] process. Appx2691-2693 at 408:12-410:5. For this reason alone, Dr. Reinman's testimony at the hearing was properly within the scope of expert discovery.

Realtek also posits that, because certain assembly code was made available by February 8th for some Realtek products used [redacted] [redacted] Dr. Reinman should have

known at the time of the initial contentions that the same assembly code was used in *other* Realtek products (*i.e.*, those incorporated into [redacted] [redacted] with different [redacted] App.Br. at 17. This argument, like Realtek's other arguments, is entirely baseless. As explained above, Realtek's 30(b)(6) witness, Mr. Yang, testified that it was RTL code (*i.e.*, [redacted]) that was used in the Realtek products. *E.g.*, Appx2503 at 168:2-6 (Mr. Yang testifying that [redacted] "is compiled to form part of the [redacted] TV SoC"); *see also* Appx2695 (email from Realtek counsel indicating [redacted]" Realtek product was used in the [redacted] [redacted]). Therefore, contrary to Realtek's assertion, DivX reasonably believed that the RTL source code was the relevant source code based on Mr. Yang's testimony at the time of the initial contentions for the [redacted] [redacted], and not the assembly code. *See* Appx2516 at 779:10-19 (Dr. Reinman testifying that he understood, based on Mr. Yang's deposition testimony, that the [redacted] process was implemented with RTL, namely [redacted].

Further, Realtek's argument is belied by its own position on June 2, 2021, immediately prior to the evidentiary hearing, where it could not even agree to representativeness as to the Realtek products used in [redacted] [redacted]. Appx2947 (email from Realtek's counsel stating: "[Y]our proposal [regarding representative products] appears not to take into account *the differences* between the various Realtek [products] used in [redacted] products."). Surely, where Realtek was not willing to agree

that its own products for [redacted] alone should be treated the same for purposes of this case, it has no grounds to impeach the credibility of Dr. Reinman for not treating assembly code for [redacted] as representative of assembly code for Realtek products used by [redacted] [redacted].

## CONCLUSION

For the above reasons, this Court should find that Realtek lacks jurisdiction to pursue this appeal. Alternatively, this Court should find that the Commission did not incorrectly deny Realtek's petition for review.

Dated: October 12, 2023

Respectfully submitted,

*<u>/s/ Michael T. Renaud</u>*

Michael T. Renaud
Adam S. Rizk
Matthew A. Karambelas
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Phone: (617) 542-6000
Fax: (617) 542-2241
MTRenaud@mintz.com
ARizk@mintz.com
MKarambelas@mintz.com

*Counsel for Intervenor DivX*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Circuit Rule 32(b)(3) and Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the typevolume limitations in Federal Circuit Rule 32(b)(1) and Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 11,682 words, excluding the exempted parts under Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this brief was prepared using 14-point Times New Roman font.

*/s/ Michael T. Renaud*
Michael T. Renaud

FORM 31. Certificate of Confidential Material

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 23-1095

**Short Case Caption:** Realtek Semiconductor Corporation v. ITC

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 14 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 10/12/2023

Signature: /s/ Michael T. Renaud

Name: Michael T. Renaud